JOHN DOE,                                     :
                                              :
      Plaintiff,           :
                                              :
v.                                            :      CIVIL ACTION NO.
                                              :      1:07-CV-2764-RWS
OFFICER WOOTEN, in his individual  :
capacity, WARDEN R. WILEY, in his  :
individual and official capacities,    :
RICK STOVER, in his individual and  :
official capacities, and FEDERAL    :
BUREAU OF PRISON DIRECTOR    :
HARLEY LAPPIN, in his official      :
capacity,                                     :
                                              :
      Defendants.       :

## ORDER

This case comes before the Court on Defendant's Motion to Dismiss or,

Alternatively, for Summary Judgment as to Individual Capacity Defendant

Stover [54] and  Defendants' Motion to Dismiss or, Alternatively, for Summary

Judgment as to Official Capacity Defendants [56].

### Background

Plaintiff John Doe, through his attorneys, initiated this action seeking

legal, equitable, and declaratory remedies for past and ongoing violations of his

Eighth Amendment rights under the United States Constitution. (Compl. [1] at 1.) Plaintiff alleges that he has been repeatedly threatened and assaulted in high-security United States Bureau of Prisons ("BOP") facilities since he cooperated in the investigation of a BOP officer at United States Penitentiary Atlanta in February 2004. (Id.) Plaintiff's complaint alleges causes of action against Defendant Officer Wooten in his individual capacity, Defendant Rick Stover in his individual capacity and his official capacity as a BOP Senior Designator, and Defendant Harley Lappin in his official capacity as Director of the BOP.[1] (Id. at 2-3.)

Plaintiff requested injunctive relief to stop Defendants from continuing to allegedly violate Plaintiff's rights under the Eighth Amendment (a) by keeping him in a high-security BOP facility despite a substantial risk of serious harm at such facilities and (b) by transporting him or allowing him to be transported through Atlanta. (Mot. for Prel. Inj. [2].) The Court denied Plaintiff's request for a preliminary injunction finding that Plaintiff failed to show a substantial likelihood of success on the merits or irreparable harm

[1]Claims against Officer Ron Wiley in his individual and official capacity were previously dismissed by the Court. (Order dated Sept. 29, 2008 [72].)

sufficient to warrant a preliminary injunction. (Order dated Sept. 29, 2008 [72].)

Defendants subsequently filed the motions to dismiss, or alternatively, for summary judgment described herein. Plaintiff contends that because Defendants failed to file a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim *prior* to filing their answer containing the same affirmative defense, Defendants' motions should be denied to the extent that they seek dismissal under Rule 12(b)(6) and treated as motions for summary judgment. (Dkt. No. [66] at 9.) After answering the Complaint asserting failure to state a claim as an affirmative defense (Dkt. No. [42] Seventh Affirmative Defense), Defendants moved the Court to dismiss Plaintiff's claims against them pursuant to Fed. R. Civ. P. 12(b)(6). Had Defendants wished to file a Rule 12(b)(6) motion for failure to state a claim for relief, they should have done so before filing their answer containing the same defense. See Rule 12(b) ("[a] motion making any of these defenses shall be made before [answering the complaint].") The Court finds that Defendants' Motions to Dismiss are in effect a nullity and may be treated as a motion on the pleadings pursuant to Fed. R. Civ. P. 12(c). Byrne v. Nezhat, 261 F.3d 1075, 1093 n. 35, 44, 46 (11th Cir. 2001). However, as

3

Defendants filed the motions in the alternative, seeking summary judgment, the

Court shall construe the motions ([54] and [56]) as such.

## Discussion

## I.      Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be

granted "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party bears

'the initial responsibility of informing the . . . court of the basis for its motion,

and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact.'"

Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004)

(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.

2d 265 (1986) (internal quotations omitted)).  Where the moving party makes

such a showing, the burden shifts to the non-movant, who must go beyond the

pleadings and present affirmative evidence to show that a genuine issue of

4

material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

With this standard as a foundation, the Court turns to address the merits of Defendants' Motions.

## II.    Defendant Stover's Motion for Summary Judgment [54]

Defendant Rick Stover seeks summary judgment, on the Plaintiff's individual capacity claim on the grounds of lack of personal jurisdiction, failure to exhaust administrative remedies, and qualified immunity. [54]

### 1.    Personal Jurisdiction over Defendant Stover

Defendant Stover seeks judgment on the basis that the Court lacks personal jurisdiction. Defendant Stover has been a Senior Designator at the BOP Designation and Sentence Computation Center ("DSCC") since December 2005 in Grand Prairie, Texas. (Pl.'s Ex. 1, Stover Dep. 12:22–13:1, Feb. 26, 2009.) He is responsible "both for the initial designation of inmates that are new to the BOP system and for redesignating inmates already in BOP custody." (Dkt. No. [96] at 4; Pl.'s Ex. 1 Stover Dep. 22:19–23:1.) As a Senior Designator, Defendant Stover reviews Requests for Transfers and selects the BOP facility to which the inmate will be transferred. (Stover Dep. 71:22–72:6, Feb. 26, 2009.) Such Requests may be accompanied by information regarding potential threats to the inmate at certain housing facilities. (See id. 44:1–45:5.) Senior Designators can record comments on a BOP Sentry database notifying JPATS (the transportation division of the U.S. Marshals Service of the

6

Department of Justice) of any limitations on the transfer or facilities that should not be used for holdovers of a particular inmate. (Id. 91:18–93:8.) Defendant Stover contends that although he did process Plaintiff's redesignation from USP Victorville to USP Big Sandy in November 2006, he was not involved in the decision to house Plaintiff at USP Atlanta in holdover status. (Def. Ex. 1 ¶¶ 17, 27.) Further, Defendant Stover neither resides nor maintains property in the state of Georgia. (Def. Ex. 1 ¶ 5.) Stover argues that his role in approving the Plaintiff's transfer does not amount to sufficient contacts to provide a basis for the Court to exercise personal jurisdiction over him. (Dkt. No. [54] at 13.) In response, Plaintiff claims that Defendant Stover failed to indicate in the BOP Sentry database that USP Atlanta posed a harm to Plaintiff and is among the facilities from which Plaintiff should be excluded. (Dkt. No. [96] at 11; Stover Dep. 93:9–19.) Such alleged omission resulted in Plaintiff's injury within the state of Georgia. (Id.)

The plaintiff bears the burden of establishing personal jurisdiction over a defendant. Francosteel Corp. v. M/V Charm, 19 F.3d 624, 626 (11th Cir. 1994). The court construes the allegations in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits or deposition testimony. Morris

v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). Where the evidence presented by the parties conflicts, the court construes all reasonable inferences in favor of the non-movant plaintiff. Id.; see Francosteel, 19 F.3d at 626

Typically, a court must conduct a two-part inquiry to determine whether a non-resident defendant may be haled into a particular forum to defend a lawsuit. Allegiant Physicians Servs., Inc. v. Sturdy Mem'l Hosp., 926 F. Supp. 1106, 1112 (N.D. Ga. 1996).

> First, the Court examines the state long arm statute. If the statutory text is satisfied, the Court determines whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend traditional notions of fair play and substantial justice. Where both jurisdictional hurdles are met, the Court may [exercise] personal jurisdiction over Defendant[].

Id.

Georgia's long-arm statute allows courts within the State to exercise jurisdiction over any defendant who (1) transacts any business in Georgia; (2) commits a tortious act or omission within Georgia; or (3) commits a tortious injury in Georgia caused by an act or omission outside the state if the non-resident solicits business in the state. O.C.G.A. § 9-10-91. Section (2) of the statute has been interpreted "to permit actions in Georgia against nonresidents

8

whose torts outside of the state cause injury within the state." <u>Ga. Gulf Corp. v.</u> <u>Ward</u>, 701 F. Supp. 1556, 1561 (N.D. Ga. 1987).  Plaintiff claims that Defendant Stover's failure to communicate to the JPATS the danger to Plaintiff of USP Atlanta resulted in Plaintiff's injury within the state of Georgia. (Dkt. No. [96] at 11.)  In construing the facts in the light most favorable to the non-moving party, the Court finds that Plaintiff has plead sufficient facts to meet requirements under Georgia's long-arm statute.

The Georgia long-arm statute confers personal jurisdiction to the full extent permitted by the Due Process Clause of the Constitution. <u>Francosteel</u>, 19 F.3d at 627.  The Due Process Clause is satisfied when the defendant has minimum contacts with the jurisdiction, and the exercise of personal jurisdiction will not offend traditional notions of fair play and substantial justice. <u>See</u> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475-76 (1985). To constitute minimum contacts for purposes of jurisdiction, the defendant's contacts with Georgia must satisfy three criteria: (1) the contacts must give rise to or be related to the plaintiff's cause of action; (2) the contacts must involve some purposeful availment by defendant of the privilege of conducting activities in the forum; and (3) the contacts with the forum must be such that the

AO 72A
(Rev.8/82)

defendant should reasonably anticipate being haled into court there.

Francosteel, 19 F.3d at 627; Allegiant, 926 F. Supp. at 1113.

As Senior Designator, Defendant Stover routinely designates inmates to BOP facilities nationwide, including facilities in Georgia. (Stover Dep. 55:20-21.) Although the specific numbers vary, Defendant Stover testified that in a typical month, he assigns approximately 3% of transfer inmates to be incarcerated in Georgia – roughly ten a month. (Id.) Additionally, Defendant Stover routinely communicates with staff members at BOP facilities in Georgia in order to facilitate transfers (Id. at 52:1-53:16.) Such contacts are directly related to Plaintiff's cause of action, which arise from Defendant's redesignation of Plaintiff from USP Victorville to USP Big Sandy in October 2006. However, all acts or omissions that Plaintiff claims support personal jurisdiction arise from Defendant Stover's position in his official capacity as a BOP employee. The Eleventh Circuit has clearly established that, " [a] nonresident individual cannot be subject to personal jurisdiction based solely upon acts in Georgia taken in his or her corporate capacity." Club Car, Inc. v. Club Car (Quebec) Import, Inc., 362 F.3d 775, 784 (11th Cir. 2004) (citing Southern Electronics Distrib. v. Anderson, 232 Ga.App. 648, 502 S.E.2d 257,

260 (1998).  Plaintiff has failed to provide any evidence to demonstrate that

Defendant Stover availed himself personally to jurisdiction in the state of

Georgia.  The Court finds that Defendant Stover's routine designation of

inmates to the state of Georgia in his capacity as a Senior Designator does not

meet the minimum contacts standard for personal jurisdiction.  Accordingly, the

Court lacks personal jurisdiction over Defendant Stover in his individual

capacity.  Defendant's Motion for Summary Judgment as to Individual Capacity

Defendant Stover [54] is **GRANTED**.[2]

## III.    Official Capacity Defendants' Motion for Summary Judgment [56]

Defendants Rick  Stover and Harley Lappin, (herein, "Official Capacity

Defendants") named parties in their official capacity, filed this motion for

summary judgment on Plaintiff's official capacity claims. [56]  Defendants

essentially argue that they are entitled to summary judgment as to Plaintiff's

claims for failure to state a right of relief or Plaintiff's failure to exhaust

administrative remedies as required under the Prison Litigation Reform Act of

1995, as amended ("PLRA"), 42 U.S.C. § 1997e(a). (Id.)

---

[2]Due to the lack of personal jurisdiction over Defendant Stover, the Court need not
address the Defendant's arguments concerning exhaustion of administrative remedies and
qualified immunity.

11

1.	Basis for Relief

Defendants argue that Plaintiff has failed to assert a cognizable claim and

therefore, the Court should grant summary judgment as to official capacity

Defendants.  In the motion, Defendants contend that there is no cause of action

allowing a court to enjoin ongoing violations of a federal prisoner's

constitutional rights and that, even if there were, Defendants would be entitled

to sovereign immunity on such a claim. (Dkt. No. [56] at 13.)  The Court

recognizes that the vehicle for constitutional suits seeking injunctive relief

against federal officers in their official capacity is not entirely clear and remains

an area of law that would benefit from some clarification.

Some federal courts have characterized constitutional claims to enjoin

federal officers as Bivens claims, even when an inmate seeks relief against

officials in their official capacity. See Bivens v. Six Unknown Named Agents of

the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619

(1971)[3]  However, as Defendants properly asserted, a Bivens claim lies only

---

[3]See Boyce v. Ashcroft, 251 F.3d 911 (10th Cir. 2001) (affirming dismissal of a
federal prisoner's habeas petition seeking transfer, noting that constitutional challenges
to conditions not affecting the fact or duration of confinement, "e.g. conditions of
confinement, must proceed under Section 1983 or Bivens "), vacated as moot, 268 F.3d
953 (10th Cir.2001); id. at 918 FN 4 ("Petitioner indeed has filed a Bivens action, seeking

against a federal officer in his individual capacity, not in his official capacity.

Thibeaux v. U.S. Atty. Gen., 275 Fed. Appx. 889, 2008 WL 1891474 (11th Cir. 2008)(unpublished)(Copy at App. 1) ("Bivens claims can be brought against federal officers in their individual capacities only; they do not apply to federal officers acting in their official capacities." citing Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70-72, 122 S.Ct. 515, 521-22, 151 L.Ed.2d 456 (2001).) Therefore, Plaintiff may not assert a Bivens claim against Defendants in their official capacity.

The Federal Tort Claims Act (FTCA) creates a cause of action for claims against federal officers' negligent or wrongful actions within the scope of their official duties. 28 U.S.C. § 1346(b)(1). However, constitutional claims, such as the one asserted by Plaintiff, may not be asserted under the FTCA. FDIC v. Meyer, 510 U.S. 471, 478, 114 S.Ct. 996, 1001, 127 L.Ed.2d 308 (1994).

The Declaratory Judgment Act, 28 U.S.C. § 2201, et seq. (1982) creates a procedural remedy by granting parties a judicial declaration of their rights under

---

an injunction which directs the BOP to transfer him to FCI Sheridan."); Kane v. Winn, 319 F.Supp.2d 162, 213 (D.Mass.2004) ("One can also seek injunctive relief via a Bivens action.") (citing Farmer v. Brennan, 511 U.S. 825, 851, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).).

13

federal law. The Declaratory Judgement Act, however, does not create a separate cause of action; a plaintiff must still assert a proper ground for federal jurisdiction. Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617, 108 A.L.R. 1000. ("the operation of the Declaratory Judgment Act is procedural only"); Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S. Ct. 876, 879 (1950) ("Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction. When concerned as we are with the power of the inferior federal courts to entertain litigation within the restricted area to which the Constitution and Acts of Congress confine them, 'jurisdiction' means the kinds of issues which give right of entrance to federal courts. Jurisdiction in this sense was not altered by the Declaratory Judgment Act.") Therefore, a plaintiff seeking a declaratory judgment against official capacity defendants, such as the case herein, must assert a substantive federal claim prior to obtaining relief.

Mandamus relief is created under 28 U.S.C. § 1361, which provides that, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Relief in the nature of

mandamus may be used to compel government officials to perform nondiscretionary duties owed to the plaintiff. See Marbury v. Madison, 5 U.S. (1 Cranch) 137, 168-69, 2 L.Ed. 60 (1803).  The writ "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear non-discretionary duty." Heckler v. Ringer, 466 U.S. 602 (1984).  Here, Plaintiff seeks to challenge the constitutionality of the Official Capacity Defendants' alleged decisions regarding his security classification and institutional housing. (Complaint [1].) Prisoner classification and housing designations are governed by 18 U.S.C. § 4081 and 18 U.S.C. § 3621, respectively. Such determinations have been previously classified by the Eleventh Circuit as discretionary. Cohen v. U.S., 151 F.3d 1338, 1343 (11th Cir. 1998) ("[t]hese statutory provisions do not mandate a specific, non-discretionary course of conduct for the BOP to follow in classifying prisoners and placing them in a particular institution.  Instead, they give the BOP ample room for judgment by listing a non-exhaustive set of factors for the BOP to consider and leaving to the BOP what weight to assign to any particular factor.")   As the alleged acts or omissions challenged by Plaintiff

in this case are all matters within the discretion of the BOP, Plaintiff cannot state a claim against Official Capacity Defendants under the Mandamus Act.

Defendants argue that because Plaintiff's claims fail as a matter of law under all the avenues cited above, summary judgement is appropriate on behalf of the official capacity defendants. In response, Plaintiff contends that 28 U.S.C. § 1331 and the federal courts' traditional equity powers provide a cause of action to enjoin federal officials' alleged ongoing violations of constitutional rights. (Dkt. No. [66] at 10 citing Bell v. Hood, 327 U.S. 678, 684 (1946) ("it is established practice . . . to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution.")

The Court finds Plaintiff's argument persuasive and holds that jurisdiction exists under § 1331 and traditional powers of equity for constitutional suits seeking injunctive relief against federal officers in their official capacity. The Court first finds that Plaintiff's claims give rise to federal question jurisdiction under 28 U.S.C. § 1331.[4] Plaintiff asserts a colorable claim under the Eighth Amendment to the Constitution. (Compl. [1].) Such

---

[4]28 U.S.C. § 1331 states, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

claim is neither "immaterial and made solely for the purpose of obtaining jurisdiction" nor "wholly insubstantial and frivolous." Arbaugh v. Y&H Corp., 546 U.S. 500, 513 (2006) (quoting Bell v. Hood, 327 U.S. at 682-83 (1946)).

Furthermore, the Court finds that the federal courts have authority to grant equitable relief to prevent constitutional violations. See e.g. Bivens, 403 U.S. at 400, 91 S.Ct. 1999 ("the presumed availability of federal equitable relief, if a proper showing can be made in terms of the ordinary principles governing equitable remedies"); Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946) ("where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief."); Simmat v. United States Bureau of Prisons, 413 F.3d 1225, 1231-32 (10th Cir. 2005) (stating that "[f]ederal courts have long exercised the traditional powers of equity, in cases within their jurisdiction, to prevent violations of constitutional rights"); Ex Parte Young, 209 U.S. 123, 151-56, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (holding that state officers "may be enjoined by a Federal court of equity" from enforcing unconstitutional statutes). Such long-standing authority to provide equitable

AO 72A
(Rev.8/82)

relief establishes the basis for relief in cases where jurisdiction has been established.

Thus, the Court holds that 28 U.S.C. § 1331 provides the basis for jurisdiction while the traditional powers of equity establish the cause of action for constitutional suits seeking injunctive relief against federal officers in their official capacity. <u>Simmat</u>, 413 F.3d at 1232 (the court held that "[e]quity . . . provides the basis for relief–the cause of action, so to speak–in appropriate cases within the court's jurisdiction" and "Section 1331 . . . provides jurisdiction for the exercise of the traditional powers of equity in actions arising under federal law. No more specific statutory basis is required.") Accordingly, Plaintiff has properly asserted an action for relief as a matter of law. [5]

### 2. Sovereign Immunity

Having found that the Plaintiff has a federal cause of action, the Court must address whether the claim is barred by the doctrine of sovereign immunity. While Plaintiff's claim is asserted against BOP officials, the claim is

---

[5]As this time, the Court need not address whether Plaintiff could have brought a cause of action under the Administrative Procedures Act ("APA") because Plaintiff's suit specifically seeks review under the Eighth Amendment, not the APA. Furthermore, Plaintiff has not brought a petition for habeas corpus relief against his current conditions under 28 U.S.C. § 2241.

in reality against the United States.  See <u>Kentucky v. Graham</u>, 473 U.S. 159,

166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) ("Official-capacity suits ...

'generally represent only another way of pleading an action against an entity of

which an officer is an agent.' ") (quoting <u>Monell v. Dept. of Social Services</u>,

436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).  Under the

doctrine of sovereign immunity, the United States of America is immune from

suit except to the extent that immunity has been expressly waived by statute.

<u>Lehman v. Nakshian</u>, 453 U.S. 156, 160 (1981).

However, the courts have recognized two exceptions to the principle of

sovereign immunity, outlined by Plaintiff. (Dkt. No. [66] at 16-22).  First, a

provision of the Administrative Procedures Act ("APA") abrogates sovereign

immunity in many suits for non-monetary relief.  In 5 U.S.C. §702, Congress

stated:

> An action in a court of the United States seeking relief other than
> money damages and stating a claim that an agency or an officer or
> employee thereof acted or failed to act in an official capacity or under
> color of legal authority shall not be dismissed nor relief therein be
> denied on the ground that it is against the United States or that the
> United States is an indispensable party.

This waiver is not limited to suits brought under the APA. <u>Simmat</u>, 413 F.3d at

1233; see also Chamber of Commerce v. Reich, 74 F.3d 1322, 1329

(D.C.Cir.1996) ("The APA's waiver of sovereign immunity applies to any suit

whether under the APA or not.").  Further, the Tenth Circuit in Simmat held

that the APA's waiver of sovereign immunity applied to the plaintiff's claims

for injunctive relief brought against BOP officials for violations of the Eighth

Amendment. 413 F.3d at 1233.  However, 18 U.S.C. § 3625 specifically limits

the APA waiver of sovereign immunity by stating that, "[t]he provisions of ...

701 through 706 of title 5, United States Code, do not apply to the making of

any determination, decision, or order under this subchapter [Subchapter C]."

This subchapter, sections 3621-3626, includes 18 U.S.C. § 3621(b) which

governs the BOP housing determinations. (*Supra* at 10.)  As such, § 3625

precludes judicial review of prisoner classification and housing determinations;

such BOP decisions are not subjected to the APA waiver of sovereign

immunity. Cook v. Wiley, 208 F.3d 1314, 1319 (11th Cir. 2000); see Martin v.

Gerlinski, 133 F.3d 1076, 1079 (8th Cir.1998) (stating "it is apparent that §

3625 precludes judicial review of agency adjudicative decisions but not of

rulemaking decisions.")  The Court concludes that 18 U.S.C. § 3625 proves

fatal to Plaintiff's assertion that sovereign immunity is unavailable through the

APA waiver under 5 U.S.C. § 702.

Next, the Supreme Court in <u>Larson v Domestic & Foreign Commerce</u>

<u>Corp</u>., 377 U.S. 682, 689 (1949) established an exception to sovereign

immunity by permitting suits for injunctive relief when government officials

acted in excess of their authority or pursuant to an unconstitutional statute. <u>See</u>

<u>id</u>. at 690, 69 S.Ct. 1457; <u>Dugan v. Rank</u>, 372 U.S. 609, 621-23 (1963).  In a

suit alleging that the defendants' actions were either unconstitutional or beyond

authority, the defense of sovereign immunity is unavailable.[6] <u>Made in the USA</u>

<u>Foundation v. United States</u>, 242 F.3d 1300, 1309 FN 20 (11th Cir. 2001) ("the

so-called Larson-Dugan exception permits suits to go forward alleging that a

government's official's actions were unconstitutional or beyond statutory

authority, on the grounds that such actions 'are considered individual and not

---

[6]However, the exception detailed in <u>Larson</u> does not apply if the injunction sought would require an affirmative action by the officials.  As  <u>Larson</u> states, "a suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property." 337 U.S. at 691 FN 11, 69 S.Ct. 1457. Controlling authority has interpreted this limitation to bar injunctive relief that would result in an, "intolerable burden on government functions, outweighing any consideration of private harm" <u>Saine v. Hospital Authority of Hall County</u> 502 F.2d 1033, 1037 (5th Cir. 1974).

sovereign actions.' " citing <u>Larson</u>, 337 U.S. at 689 (1949)); <u>see</u> <u>also</u> <u>Carter v.</u>

<u>Seamans,</u> 411 F.2d 767, 770 (5th Cir. 1969).  Here, Plaintiff argues that because

he asserts that the actions of the federal Official Capacity Defendants were

unconstitutional, the defense of sovereign immunity is not available. (Dkt. No.

[66] at 17.)

     The Court finds the Plaintiff's argument misguided.  True, the Supreme

Court in <u>Larson</u> recognized suits against an officer if the officer has acted

unconstitutionally or *ultra vires* his authority.  However, it is insufficient to

allege that the actions of the official were illegal.  Rather, a plaintiff must

demonstrate that the official is not acting on behalf of the sovereign.  As stated,

> the mere allegation that the officer, acting officially, wrongfully
> holds property to which the plaintiff has title does not meet that
> requirement.  True, it establishes a wrong to the plaintiff.  But it
> does not establish that the officer, in committing that wrong, is not
> exercising the powers delegated to him by the sovereign.   If he is
> exercising such powers the action is the sovereign's and a suit to
> enjoin it may not be brought unless the sovereign has consented.

<u>Larson</u>, 337 U.S. at 693 (1974).

     Plaintiff alleges in his complaint that Official Capacity Defendants

violated his rights under the Eighth Amendment by refusing to transfer him

from a high-security BOP and by transporting him through USP Atlanta despite a substantial risk of serious physical harm. (Complaint [1] at 14-16.) Plaintiff has failed to allege that Official Capacity Defendants acted outside the scope of their authority or contrary to powers delegated by the sovereign. Accordingly, Plaintiff's claims against Official Capacity Defendants do not fall within the Larson-Dugan exception to sovereign immunity. Finding no clear authority constituting a waiver of sovereign immunity, Plaintiff's claims against Official Capacity Defendants are barred as a matter of law.

3.    Exhaustion of Administrative Remedies

Having found that Plaintiff's claims against Official Capacity Defendants are barred by sovereign immunity, the Court need not further resolve the factual issue as to whether the Plaintiff exhausted administrative remedies required under the PLRA.

In conclusion, Plaintiff's claims against Official Capacity Defendants are barred as a matter of law by sovereign immunity. Defendants' Motion for Summary Judgment as to Official Capacity Defendants [56] is **GRANTED**. Judgment shall be entered in favor of Defendants Rick Stover and Harley Lappin for claims asserted against them in their official capacity.

**Conclusion**

Defendant's Motion for Summary Judgment as to Individual Capacity Defendant Stover [54] is **GRANTED**. Defendants' Motion for Summary Judgment as to Official Capacity Defendants [56] is **GRANTED**. The Court **DIRECTS** the Clerk to **ENTER JUDGMENT** in favor of Defendants Rick Stover and Harley Lappin and against Plaintiff in this action.

**SO ORDERED** this __30th__ day of March, 2009.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)