IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| JOHN DOE, | : CIVIL ACTION |
| Plaintiff, | : NO. 1:07-CV-2764-RWS |
| v. | : |
| OFFICER WOOTEN, in his individual capacity; et al., | : |
| Defendants. | : |

**SUPPLEMENTAL BRIEF IN SUPPORT OF**
**OFFICIAL CAPACITY DEFENDANTS' MOTION TO DISMISS**
**OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**
**SUBMITTED PURSUANT TO ORDER OF JUNE 8, 2010**

COME NOW the remaining defendants, Rick Stover and Harley Lappin, sued in official capacity as employees of the Bureau of Prisons, by and through counsel, and file their Supplemental Brief in accordance with the Court's Order of June 8, 2010 (Court Record Docket Entry ("CR") [120]. The arguments below and in defendants' motion to dismiss or for summary judgment show that they are entitled to dismissal or summary judgment on plaintiff's remaining claims pursuant to Fed.R.Civ.P. 12(b)(6) and 56.

### I.   BACKGROUND INFORMATION

Plaintiff filed this action initially naming a number of individual and official capacity defendants. All claims were terminated by plaintiff's dismissal with prejudice or pursuant to court order rejecting plaintiff's claims. Plaintiff appealed the final order and judgment entered in this case, resulting in reversal of the dismissal of his claims against official capacity defendants Lappin and Stover.

The appeals court identified plaintiff's claim against these defendants as allegations that they "violated the Plaintiff's Eighth Amendment right against cruel and unusual punishment by acting with deliberate indifference in failing to protect Plaintiff from retaliation after he participated in the investigation of a Bureau of Prisons officer in Atlanta, Georgia."  (CR [117] at 2).  As presented on appeal, plaintiff sought "an injunction 'permanently enjoining Defendants from transporting Mr. Doe to or through any BOP facility in Atlanta' and requiring the transfer of Mr. Doe to an appropriate and safe housing placement such as a medium or low security BOP facility or a state correctional facility.'"  Id. (quoting Complaint at 18).

The appeals court explained that "a plaintiff may be able to obtain injunctive relief against a federal officer acting in his official capacity when the officer acts beyond statutory or constitutional limitations," id. at 4 (citing Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949); Saine v. Hosp. Auth., 502 F.2d 1033, 1036-37 (5th Cir. 1974)).  The court then held "that the Eighth Amendment violations Plaintiff alleges are within the types of actions by prison officials that may, if proved, warrant injunctive relief."  Id.  Thus, because the district court had determined that plaintiff failed to allege acts that may be enjoined, the Court of Appeals vacated the judgment in favor of these official capacity defendants and remanded with instructions to "perform the balancing analysis required by ... precedent."  Id. at 5.  The appeals court specifically instructed the court to "determine 'whether the relief sought would work an intolerable burden on governmental functions,

outweighing any consideration of private harm.'" Id. (quoting Saine, 502 F.2d at 1037). The appeals court also suggested that the district court may consider in the first instance defendants' argument that plaintiff failed to exhaust administrative remedies. Id.

## II. DISCUSSION

As support for the arguments below, defendants rely on the background facts set forth in their Statement of Undisputed Facts in Support of Official Capacity Defendants' Motion for Summary Judgment (the motion hereinafter shall be referenced as "MSJ" and the supporting statement of facts shall be referenced as "MSJSOF"), and the exhibits previously submitted in support these or other defendants' dispositive motions.

### A. Plaintiff Failed to Exhaust Administrative Remedies for Claims Against Official Capacity Defendants

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e(a) to make exhaustion of available administrative remedies a precondition to filing suit on Bivens claims brought by federal prisoners and to eliminate judicially created exceptions to the exhaustion requirement. Booth v. Churner, 532 U.S. 731 (2001); Alexander v. Hawk, 159 F.3d 1321 (11th Cir. 1998). The PLRA provides that "no action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner ... until such administrative remedies as available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). "There is

no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007).

The Federal Bureau of Prisons makes available to all inmates a three level Administrative Remedy Program through which an inmate may seek formal review of any issue relating to his confinement, if informal resolution procedures fail to achieve sufficient results. 28 C.F.R. §§ 542.10 - 542.18. The administrative remedy process is begun by filing a formal written Administrative Remedy Request on the appropriate form at the institution where the inmate is incarcerated. 28 C.F.R. § 542.14. This process must be initiated within 20 calendar days after the event forming the basis of the request. Id.

If not satisfied with the Warden's response at step one, the inmate may submit an appeal, using the appropriate form, to the Regional Director for the geographic region of the BOP within which the inmate is incarcerated. 28 C.F.R. § 542.15(a), (b). If not satisfied with the response of the Regional Director, the inmate may submit another appeal, using the appropriate form, to the BOP's General Counsel. 28 C.F.R. § 542.15(a). An appeal to the General Counsel is the final stage in the administrative remedy process. 28 C.F.R. § 542.15(a). The PLRA, in 42 U.S.C. § 1997e(a), "uses the term 'exhausted' to mean what the term means in administrative law, where the term means proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). Proper exhaustion here requires timely appeal through all levels, including to the General Counsel that complies with BOP regulations so that it is decided on the merits at all levels.

Plaintiff alleges that he exhausted administrative remedies for his claims. His allegations of Eighth Amendment violations against these defendants, however, present two claims: (1) that he faces a risk of harm because he has been designated to high security level institutions instead of lower security or state facilities, and (2) that he faces a risk of harm if he is ever placed in USP Atlanta by designation or in transit between other facilities, and neither claim has been administratively exhausted.

As to plaintiff's first constitutional claim seeking designation to lower security institutions, BOP records show that he failed to exhaust an administrative claim in which he requested to be transferred to a facility with a medium or lower security level because his designation to a high security facility is unconstitutional. Plaintiff did exhaust a claim that he should be transferred to a lower security facility because he was promised such a designation. (Def. Ex. 6 ¶ 9). However, his promise, or implied contract, claim is not relevant here. The Eleventh Circuit remanded to consider only constitutional claims under Larson and Saine. While plaintiff may protest that exhaustion of any allegation concerning lower security housing is sufficient, the PLRA requires proper exhaustion of each "claim." Jones v. Bock, 549 U.S. at 219-24 (there is no total exhaustion rule; instead, where complaint states exhausted and unexhausted claims, court must dismiss unexhausted claims, but plaintiff may proceed on exhausted claims). Thus, since plaintiff has not submitted administrative remedies raising his claim concerning the constitutionality of his designation to a high security facility as

opposed to lower security or state facilities or a witness protection program, and thus has not exhausted this claim, his claim must be dismissed.[1]

Plaintiff's second claim against the official capacity defendants seeks to require the BOP to insure that he is never returned to USP Atlanta either by redesignation or as a holdover in transit.  The court of appeals described this claim as an allegation that defendants violated his Eighth Amendment right against cruel and unusual punishment by acting with deliberate indifference in failing to protect him from retaliation after his participation in the investigation of a BOP officer in Atlanta, which participation the Complaint concedes occurred in 2004, and the Complaint and evidence in the record shows that his claim is based on temporary stays at USP Atlanta, not in general population but instead in the Receiving and Discharge component, while in transit between facilities.  Review of plaintiff's administrative remedies since January, 2004, shows that, although he exhausted a claim for damages based on his allegation of assault by USP Atlanta staff, he has never exhausted remedies for a request that the BOP insure that he is never returned to USP Atlanta, either by redesignation or as a holdover in transit based on a deliberate indifference or Eighth Amendment violation.  (Def. Ex. 6 ¶¶ 7-11).

---

[1] After plaintiff filed his Complaint in this case, he was transferred to another institution, USP Lewisburg, consistent with a request to staff seeking transfer to any other facility, including another USP.  To the extent he may seek to challenge the constitutionality of that transfer or otherwise claim entitlement to yet another transfer, he has not amended the complaint to advance such claim and he clearly could not have exhausted administrative remedies for such a claim prior to filing suit.

Plaintiff has failed to exhaust administrative remedies for claims concerning placement at USP Atlanta, concerning the constitutionality of his past or present designation to a high security facility, or concerning any aspect of his current designation to USP Lewisburg. The official capacity defendants, therefore, are entitled to dismissal or summary judgment in their favor on plaintiff's claims.

**B.   Relief Sought Would Work an Intolerable Burden on Governmental Functions Outweighing Any Consideration of Private Harm**

The appeals court explained that "a plaintiff may be able to obtain injunctive relief against a federal officer acting in his official capacity when the officer acts beyond statutory or constitutional limitations," id. at 4 (citing Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949); Saine v. Hosp. Auth., 502 F.2d 1033, 1036-37 (5th Cir. 1974)). The court then disagreed with the district court and held "that the Eighth Amendment violations Plaintiff alleges are within the types of actions by prison officials that may, if proved, warrant injunctive relief," and remanded the case to consider plaintiff's claim under the balancing analysis required by Saine, 502 F.2d at 1037. (CR [117] at 4-5). Plaintiff's claim as defined for appeal is that defendants "violated the Plaintiff's Eighth Amendment right against cruel and unusual punishment by acting with deliberate indifference in failing to protect Plaintiff from retaliation after he participated in the investigation of a Bureau of Prisons officer in Atlanta, Georgia." (CR [117] at 2).[2]

---

[2]   The Court of Appeals, by noting that plaintiff's allegations "if proved" may warrant injunctive relief, accepted the allegations for
(continued...)

Larson instructed that the issue of whether a claim may be maintained against a federal officer in official capacity

> arises whenever suit is brought against an officer of the sovereign in which the relief sought from him is not compensation for an alleged wrong but, rather, the prevention or discontinuance, in rem, of the wrong. In each such case the compulsion, which the court is asked to impose, may be compulsion against the sovereign, although nominally directed against the individual officer. If it is, then the suit is barred, not because it is a suit against an officer of the Government, but because it is, in substance, a suit against the Government over which the court, in the absence of consent, has no jurisdiction.

Larson, 337 U.S. at 688. The Court recognized two types of cases as "the only ones in which a restraint may be obtained against the conduct of Government officials": (1) where the officer is acting in excess of his authority, and (2) where the officer's actions are claimed to be unconstitutional or are taken pursuant to a statute claimed to be unconstitutional. Id. at 689-90. The Larson court further instructed that

> a suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of

---

[2] (...continued)
the purpose of deciding whether dismissal was proper. Larson instructed that "[t]here may be, of course, suits for specific relief against officers of the sovereign which are not suits against the sovereign"; "[a]nd, since the jurisdiction of the court to hear the case may depend ... upon the decision which it ultimately reaches on the merits, it is necessary that the plaintiff set out in his complaint the statutory limitation on which he relies." Larson, 337 U.S. at 689-90. Thus, in the event the district court determines under Saine that dismissal on grounds of sovereign immunity is not appropriate based merely on plaintiff's unproven allegations, the jurisdictional issue would require a decision on the defendants' arguments seeking summary judgment on the merits of plaintiff's claims against them, (CR [56-2] at section II.E.1.c.ii).

>unquestionably sovereign property.  North Carolina v. Temple, 1890, 134 U.S. 22, 10 S.Ct. 509, 33 L.Ed. 849.

Larson, 337 U.S. at 691 n.11.  An noted by the appeals court in the present case, in Saine v. Hosp. Auth., 502 F.2d 1033 (5th Cir. 1974), the Fifth Circuit found an exception to the exception stated in Larson's footnote 11, explaining that

> In Zapata,[3] we held that the nature of the suit brought it within the "exception to the exception" because the relief sought, back pay, could only be satisfied out of the public treasury and would thus affect the "disposition of unquestionably sovereign property" in the form of public monies.  Granting the relief requested against the Secretary in the present case would not effect a raid on the treasury, but the question remains whether it would "require affirmative action by the sovereign" of such a nature that it too must fail under footnote 11 of Larson.  While we have not previously addressed this question, the Courts of Appeals for the Ninth and District of Columbia Circuits have done so, and both have concluded that footnote 11 of Larson does not bar all actions seeking affirmative action by governmental officials.

Saine, 502 F.2d at 1036-37.  Thus, Saine clarified the prior panel decision in Zapata and held that

> the purposes for the doctrine of sovereign immunity may be controlling in some suits against officers so that the suits must be dismissed as suits against the Government, even though the officers were not acting pursuant to valid statutory authority, because the relief sought would work an intolerable burden on governmental functions, outweighing any consideration of private harm.

Saine, 502 F.2d at 1036-37. On remand, the district court, accepting plaintiff's allegation of unconstitutional conduct  as true only for purposes of deciding whether sovereign immunity dismissal is appropriate, must decide whether under the Saine balancing analysis plaintiff's claim must be dismissed as a suit against the sovereign.

---

[3]   Zapata v. Smith, 437 F.2d 1024, 1025 (5th Cir. 1971).

The court's balancing analysis requires consideration of what is an intolerable burden on the BOP. Research of cases invoking the concept of "intolerable burden" has not identified a case defining that term. The ordinary meaning of intolerable is "not tolerable" or "excessive." Merriam Webster's Collegiate Dictionary, 613 (10th ed. 1997). "Tolerable" is defined as "capable of being borne or endured" or "moderately good or agreeable." Id. at 1241. The primary definitions for "burden" are "something that is carried" or "duty, responsibility." Id. at 152. In the context of a Saine analysis, the appropriate definition of "intolerable burden" thus is a duty that is not agreeable or that cannot be endured by the BOP. While case law does not define intolerable burden, sampling of those cases presenting Larson issues may provide guidance. First, it is clear that under Larson a claim will fail as one against the sovereign where the plaintiff seeks to compel payment by the government. De Lao v. Califano, 560 F.2d 1384, 1391 (9th Cir. 1977) (held that claim for retroactive disability benefits was barred because "ordering the payment of retroactive benefits from the federal treasury would 'work an intolerable burden' on the government."); Johnson v. Mathews, 539 F.2d 1111 (8th Cir. 1977)(held Larson bars retroactive disability benefits payments because it would require affirmative action to compel payments). In contrast, claims have been permitted under Larson where injunction would merely require previously authorized action. State Highway Comm'n of Missouri v. Volpe, 479 F.2d 1099, 1123 (8th Cir. 1973) (held, where Secretary of Transportation deferred state's apportionment of highway funds, injunctive relief was not

affirmative since it would result in "release of funds ... only to the extent that Congress has already authorized them to be appropriated and expended."); Washington v. Udall, 417 F.2d 1310, 1313, 1317 (9th Cir. 1969) (state claim seeking to compel federal officials to release water to irrigable land not barred under Larson where injunction would bar actions not conforming to statutory requirements). See Watson v. U.S., 2007 WL 5171595 *8 (Fed.Cl. 2007)(non-Larson case, concluded that filing of "multiple claims with little factual support in multiple courts 'which have no hope of succeeding place[s] an unnecessary and intolerable burden on judicial resources,'" but the "real abuse falls upon the Department of Justice, charged with filing briefs to point out the obvious lack of jurisdiction or meritless claims")(quoting McEnery v. Merit Sys. Protection Bd., 963 F.2d 1512, 1516 (Fed. Cir. 1992)).

In its balancing analysis, the court must consider the harm the record demonstrates the plaintiff would suffer absent the requested relief. On the other side of the scale, the court must consider the burden on the BOP if the requested relief is granted. Plaintiff Doe contends that, in the event he establishes that defendants "violated the Plaintiff's Eighth Amendment right against cruel and unusual punishment by acting with deliberate indifference in failing to protect Plaintiff from retaliation after he participated in the investigation of a Bureau of Prisons officer in Atlanta, Georgia," he is entitled to two forms of injunctive relief that: (1) "permanently enjoin[s] Defendants from transporting Mr. Doe to or through any BOP facility in Atlanta," and (2) prohibits defendants "from incarcerating

Mr. Doe in a high security BOP facility and requir[es] the transfer of Mr. Doe to an appropriate and safe housing placement such as a medium or low security BOP facility or a state correctional facility." (CR [1] at 18).

### a.  Housing at USP Atlanta

Plaintiff first seeks injunctive relief permanently enjoining defendants from transporting Mr. Doe to or through any BOP facility in Atlanta.  Thus, he seeks to proscribe both his future transfer to USP Atlanta for service of his sentence, and his temporary placement in the Receiving and Discharge area of USP Atlanta while in transit between facilities in the event of future transfers between other facilities.  Here, plaintiff can show no harm if both prongs of this request for relief are denied.

While plaintiff relies heavily on an alleged future risk of harm if he is placed at USP Atlanta, it is undisputed, and the record confirms, that he has not been designated to USP Atlanta since his removal in 2004, pursuant to an investigation of a BOP officer who aided plaintiff to receive contraband.  The record further shows that plaintiff has not been at USP Atlanta, even in an in-transit holdover status since November, 2006.  (Def. Exs. 2, 3).  The record also shows that plaintiff cannot be re-designated to USP Atlanta.  That facility has been re-classified as a medium security institution.  (Def. Ex. 2 ¶ 23 & Attachment Tab 5).  However, due to plaintiff's life sentence for armed robbery, he has a public safety factor ("PSF") for sentence length which requires that he be housed in a high security level institution.  (Def. Ex. 2 ¶ 22 & Attachment Tab 4); (PS-5100.08 (Def.

Ex. 7), ch. 5, p. 9).  Thus, due to his security requirements, plaintiff cannot be redesignated to USP Atlanta or any other medium security level facility.  (Def. Ex. 2 ¶ 23).  In light of the absence of any evidence in the record demonstrating potential harm to plaintiff from a risk of transfer back to USP Atlanta, any burden on the defendants, thus on the BOP, from an injunction proscribing plaintiff's transfer to USP Atlanta would be intolerable, in that it would be an improper and unnecessary judicial intrusion into the BOP's discretionary decisions concerning classification and housing of prisoners.

As noted, it is beyond dispute that plaintiff has not been at USP Atlanta in even an in-transit holdover status since November 2006. This fact alone should show that any burden placed on the defendants enjoining them from routing plaintiff through USP Atlanta in transit between other facilities would be intolerable when compared to the minimal risk of future harm to plaintiff in injunction is denied.  As to this requested relief, however, an injunction would be intolerable for the additional reason that the defendants and BOP have no authority to implement any such injunction.  The record shows that the BOP, through the defendants, does not control prisoner transportation incident to a transfer; instead, all prisoner transportation scheduling is handled at JPATS[4] headquarters in Kansas City, Missouri. (Def. Ex. 5 ¶¶ 4-5).  "JPATS scheduling 'determines the method of transporting prisoners,' utilizing options such as buses, commercial aircraft, JPATS aircraft, of USPS large aircraft."  Id. ¶ 6.  JPATS

---

[4]  The United States Marshals Service's Justice Prisoner and Alien Transportation System ("JPATS").

schedules flights into and out of Atlanta, and during a prisoner transfer is responsible for reserving overnight housing space for prisoners during the transport. Id. ¶ 7 & Attachment 1 ¶ E.2.b. For example, as to plaintiff's transfer in November 2006, defendant Stover was responsible only for the decision to approve a transfer request and to redesignate plaintiff to USP Big Sandy. Defendant Stover had no input into the transportation arrangements of the Marshals Service for transferring plaintiff from USP Victorville to USP Big Sandy in November, 2006, and he was not involved in the decision to temporarily house plaintiff at USP Atlanta in holdover status for the time from arrival of his flight in Atlanta until he was transported on to USP Big Sandy. (Def. Ex. 1 ¶¶ 17, 27). The record also shows that defendant Lappin is not involved in decisions concerning prisoner transport, as those decisions are within the authority of JPATS. (Def. Ex. 3). No JPATS employee has been named as a defendant in official capacity in this lawsuit. Logic dictates that it would be an intolerable burden on these defendants and the BOP to enjoin them from making transport decisions that are within the discretionary authority of another federal agency -- JPATS.

    b.    **Housing at Facilities Preferred by Plaintiff**

Plaintiff's second demand for relief seeks an injunction to prohibit defendants from incarcerating him in a high security BOP facility and requiring that he be transferred to an appropriate and safe housing placement, such as a medium or low security BOP facility or a state correctional facility. However, after filing his Complaint in this action on November 7, 2007, while designated to USP Big Sandy,

plaintiff submitted an Inmate Request to Staff dated May 4, 2008, stating that he desired to be either provided a PSF waiver and placed at an FCI, <u>or transferred to other U.S. Penitentiaries</u>.  (Def. Ex. 10).  As of August 21, 2008, plaintiff had been transferred to another U.S. Penitentiary, USP Lewisburg, Pennsylvania, where he was in general population and working a Unicor job.  (Def. Ex. 11).  After arrival at USP Lewisburg, staff were required to investigate a complaint by plaintiff that he had been assaulted at that facility on July 2, 2008.  (Def. Ex. 12).  Plaintiff admitted to staff that he lied about the assault because he is homosexual and other homosexual inmates told him it was better to be on the west side, where inmates could close their cell door.  <u>Id.</u> ¶¶ 2-6.  Since no threat existed, plaintiff was released from special housing and given a cell in D Block.  <u>Id.</u> ¶ 7.  Although plaintiff has been housed in high security facilities since his transfer from USP Big Sandy, the record does not show any verified harm, or even a verified threat of harm to plaintiff's safety by other inmates at his designated facility (whether due to reputation as a "snitch" or any other reason), and the record does not demonstrate that he faces more than a speculative risk of harm if he is not transferred to a lower security or state facility or placed in a witness protection program.

   Decisions concerning prisoner classification, designation, and redesignation are made by the BOP's Designation & Sentence Computation Center ("DSCC"), which is located in Grand Prairie, Texas.  (Def. Ex. 2 ¶ 1).  The DSCC's decisions concerning prisoner classification, designation, and redesignation are guided by BOP policy set out in

Program Statement ("PS") 5100.08, "Inmate Security Designation and Custody Classification (9/12/2006)," signed by defendant Lappin. (Def. Ex. 2 at 1-5 & ¶ 10). The BOP uses Public Safety Factors (PSF) to identify inmates who are not appropriate for placement at an institution which would permit inmate access to the community, based of demonstrate behaviors that require increased security measures to ensure the protection of society. The application of a PSF overrides security point scores to ensure the appropriate security level is assigned to an inmate. (PS-5100.08, ch. 2, p. 9). As previously noted, due to plaintiff's life sentence for armed robbery, he has a PSF for sentence length which requires that he be housed in a high security level institution. (Def. Ex. 2 ¶ 22 & Attachment Tab 4); (PS-5100.08, ch. 5, p. 9). Due to his security requirements, plaintiff cannot be redesignated to USP Atlanta or any other medium security level facility. (Def. Ex. 2 ¶ 23).

A grant of relief mandating the security levels of facilities where defendants can or cannot designate plaintiff under these facts would subject them to an intolerable burden that far outweighs any speculative risk of harm to plaintiff if an injunction is denied. The BOP would be required to ignore its own policies governing classification and designation of inmates. The BOP would then be required to classify and designate plaintiff to facilities for which the BOP had determined his placement is not appropriate, creating an increased risk to the community by his placement in less secure facilities with increased access to the public. Such an injunction would also prevent the BOP from placing plaintiff in a higher security

facility based on post-injunction conduct that may require placement back in a USP, at Marion, or even at the ADX facility in Colorado. It also would place the court in the position of micro-managing the BOP's exercise of authority vested in it by law, and prohibiting it from considering housing factors required by law. Such relief also would ignore the fact that the BOP has alternative means for securing plaintiff's safety, including administrative segregation, or transfer to other high security facilities at which no separatees for plaintiff are housed, as well as the fact that BOP transferred plaintiff after initiation of this lawsuit to another USP consistent with his request in the alternative for such a transfer and that he was able to enter general population and obtain a Unicor job.

### III. CONCLUSION

For the reasons stated above and in their summary judgment motion on the merits of plaintiff's claims, official capacity defendants respectfully request that this Court enter an order dismissing or granting a summary judgment in favor of these defendants.

Respectfully submitted,

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY

s/ *R. David Powell*
R. DAVID POWELL
ASSISTANT U.S. ATTORNEY
Georgia Bar No. 586450
600 Richard Russell Building
75 Spring Street, SW
Atlanta, Georgia 30303
Voice:     (404) 581-6000
Fax:       (404) 581-6150
Email: R.David.Powell@usdoj.gov

```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF GEORGIA
                       ATLANTA DIVISION

JOHN DOE,                           : CIVIL ACTION
                                    :
      Plaintiff,                    : NO. 1:07-CV-2764-RWS
                                    :
      v.                            :
                                    :
OFFICER WOOTEN, in his individual   :
capacity; et al.,                   :
                                    :
      Defendants.                   :
```

### CERTIFICATE OF COMPLIANCE

    I certify that the documents to which this certificate is attached have been prepared with one of the font and point selections approved by the Court in LR 5.1B for documents prepared by computer.

                                        *s/ R. David Powell*
                                        R. DAVID POWELL
                                        ASSISTANT U.S. ATTORNEY
                                        Georgia Bar No. 586450

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOHN DOE, | : CIVIL ACTION |
| Plaintiff, | : NO. 1:07-CV-2764-RWS |
| v. | : |
| OFFICER WOOTEN, in his individual capacity; et al., | : |
| Defendants. | : |

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **SUPPLEMENTAL BRIEF IN SUPPORT OF OFFICIAL CAPACITY DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT SUBMITTED PURSUANT TO ORDER OF JUNE 8, 2010** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following lead attorney(s) of record:

David Lewis Balser
Jeffrey H Lerner

This  29th  day of June, 2010.

s/ *R. David Powell*
R. DAVID POWELL
ASSISTANT U.S. ATTORNEY
Georgia Bar No. 586450