IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOHN DOE, | : |
| | : |
| Plaintiff, | : |
| | : Civil Action |
| v. | : No. 07-CV-2764-RWS |
| | : |
| OFFICER WOOTEN, in his individual | : |
| capacity, WARDEN R. WILEY, in his | : |
| individual and official capacities, RICK | : |
| STOVER, in his individual and official | : |
| capacities, and BUREAU OF PRISONS | : |
| DIRECTOR HARLEY LAPPIN, in his | : |
| official capacity. | : |
| | : |
| Defendants. | : |
| | : |

**PLAINTIFF JOHN DOE'S SUPPLEMENTAL OPPOSITION TO
OFFICIAL CAPACITY DEFENDANTS' MOTION TO DISMISS OR,
ALTERNATIVELY, FOR SUMMARY JUDGMENT**

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ................................................................... ii

I.  INTRODUCTION ..........................................................................1

II.  Plaintiff's Requested Relief Would Not Impose An "Intolerable Burden
    Outweighing Any Consideration Of Private Harm" ..........................................3

    A.     Defendants Fail To Show that an Injunction Ordering that
           He Not Be Returned to a BOP Facility in Atlanta Would
           Impose "Undue Burden" on Defendants. ..............................................8

    B.     Defendants Fail To Show that an Injunction Ordering
           that Plaintiff Be Placed in a Safe and Appropriate Facility
           Would Impose "Undue Burden" on Defendants. ..................................9

    C.     Defendants' Sovereign Immunity Argument Is Misplaced
           Because the Court Can Fashion an Appropriate Remedy,
           Taking into Account Any Well-Founded Burdens on
           Defendants, After the Record Is More Fully Developed. ...................12

III.  Plaintiff Has Exhausted Available Administrative Remedies..........................13

IV.  Conclusion ..................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Abney v. McGinnis,*
    380 F.3d 663 (2d Cir. 2004) ................................................................15

*Almond v. Tarver,*
    468 F. Supp. 2d 886 (E.D. Tex. 2006).................................................15

*Bell v. Hood,*
    327 U.S. 678 (1946)............................................................................13

*Booth v. Churner,*
    532 U.S. 731 (200 ..............................................................................18

*Brown v. Sikes,*
    212 F.3d 1205 (11th Cir. 2000) ..........................................................16

*Brownell v. Krom,*
    446 F.3d 305 (2d Cir. 2006) ...............................................................16

*Bryant v. Rich,*
    530 F.3d 1368 (11th Cir. 2008) ..........................................................17

*Clark v. Library of Congress,*
    750 F.2d 89 (D.C. Cir. 1984)................................................................6

*Doe v. Wooten,*
    No. 09-13707, 2010 WL 1645136 (11th Cir. Apr. 26, 2010).......................3, 5, 7

*Farmer v. Brennan,*
    511 U.S. 825 (1994)....................................................................4, 6, 7

*Griffin v. Arpaio*,
    557 F.3d 1117 (9th Cir. 2009) ...........................................................................16

*Johnson v. Johnson*,
    385 F.3d 503 (5th Cir. 2004) .............................................................................16

*Johnson v. Testman*,
    380 F.3d 691 (2d Cir. 2004) ...............................................................................20

*Jones v. Bock*,
    549 U.S. 199 (2007)...........................................................................15, 16, 20

*Kingsland v. City of Miami*,
    382 F.3d 1220 (11th Cir. 2004) ...........................................................................5

*Knox Hill Tenant Council v. Washington*,
    448 F.2d 1045 (D.C. Cir. 1971)...............................................................5, 6, 12

*Kikumura v. Osagie*,
    461 F.3d 1269, 1283 (10th Cir. 2006) .................................................................20

*Porter v. Nussle*,
    534 U.S. 516 (2002)...........................................................................................17

*Priester v. Rich*,
    457 F. Supp. 2d 1369 (S.D. Ga. 2006) ...............................................................20

*Ross v. County of Bernalillo*,
    365 F.3d 1181 (10th Cir. 2004) .........................................................................15

*Saine v. Hospital Authority of Hall County*,
    502 F.2d 1033 (5th Cir. 1974) .....................................................................passim

*Sample v. Lappin*,
    424 F. Supp. 2d 187 (D.D.C. 2006).....................................................................18

*Strong v. David*,
    297 F.3d 646 (7th Cir. 2002) .........................................................16, 18, 20, 21

*Sulton v. Wright*,
   265 F. Supp. 2d 292 (S.D.N.Y. 2003) .................................................................15

*Woodford v. Ngo*,
   548 U.S. 81 (2006)............................................................................................21


**STATUTES**

42 U.S.C. § 1997e(a)...............................................................................................16

Pursuant to the Court's June 8, 2010 Order, Plaintiff John Doe submits the following response to the Official Capacity Defendants' Supplemental Brief in Support of their Motion to Dismiss or, Alternatively, for Summary Judgment, addressing (1) whether the relief requested by Plaintiff would "work an intolerable burden on government functions, outweighing any consideration of private harm," and (2) Plaintiff's exhaustion of administrative remedies.

## I.    INTRODUCTION

Plaintiff is an inmate in the custody of the United States Federal Bureau of Prisons ("BOP") who has repeatedly been threatened and assaulted because he cooperated in the investigation of a BOP officer at a high-security BOP facility in Atlanta.   The BOP has failed to adequately protect Mr. Doe, and indeed has increased the risk of harm to him by twice causing Mr. Doe to be sent back to United States Penitentiary ("USP") Atlanta, the site of the investigation in which he cooperated.   The second time Mr. Doe was returned to USP Atlanta, during a transfer in 2006 directed by Defendant Rick Stover, Mr. Doe was physically and sexually assaulted by a BOP guard, Officer Wooten, who explicitly referred to Mr. Doe's cooperation in the investigation.

Mr. Doe faces a significant and well-documented risk of assault at high-security BOP facilities because he has been labeled as a "snitch" within the high-

security prison population.  Indeed, Mr. Doe has repeatedly encountered inmates in the high-security BOP facilities who are aware of his cooperation in the investigation of a BOP officer.  (*See, e.g.*, Ex. 1 at 37:2-16, 38:9-18, 44:1-9; Ex. 2 (explaining that "[t]wo inmates at USP Florence are aware of [Mr. Doe's] cooperation and provided SIS with information that inmate [Doe] would probably be assaulted if he were placed in the general population").)

Since this case was last before this Court, the BOP has again moved Mr. Doe among several high-security BOP facilities.  And Mr. Doe has again been assaulted in one.  First, Mr. Doe was transferred from USP Lewisburg to USP Terre Haute in Indiana.  There, in March 2010, Plaintiff was assaulted by another inmate.  (Ex. 3)  Counsel is informed that Mr. Doe was assaulted because he was believed to be a "snitch."[1]  After being assaulted, Mr. Doe attempted suicide.  (*Id.*)  Plaintiff was then transferred to USP Canaan in Pennsylvania, where he now resides.  Plaintiff was recently informed that he will be transferred yet again to another high-security BOP facility.

Although wardens at three high-security BOP facilities have recommended that Plaintiff be transferred to a medium-security BOP facility (see Exs. 4-6), Defendants persist in keeping Mr. Doe in high-security BOP facilities where the

---

[1] Should it assist the Court, Plaintiff's counsel can obtain a sworn declaration from Mr. Doe concerning this assault.

risks of harm to him as a reputed "snitch" are well known.   At the same time,

Defendants have refused to explain their unwillingness to transfer Mr. Doe to a

safe and appropriate facility, be it a medium security BOP facility, a state prison of

any security level, or a witness-protection program.

## II.    Plaintiff's Requested Relief Would Not Impose An "Intolerable Burden Outweighing Any Consideration Of Private Harm"

Plaintiff requests two forms of injunctive relief: (1) an injunction preventing

Defendants from placing Mr. Doe in or transporting him to the BOP facility in

Atlanta; and (2) an injunction requiring Defendants to have Mr. Doe placed in a

safe and appropriate facility as opposed to a high-security BOP facility – whether

the safe and appropriate facility is a medium security BOP facility (besides

Atlanta) as three BOP wardens have recommended, a state prison facility, or in a

BOP witness protection program.   Defendants have failed to show that either

aspect of the requested relief would impose an intolerable burden on governmental

functions, outweighing any consideration of private harm.

In vacating this Court's summary judgment based on sovereign immunity to

the Official Capacity Defendants, the United States Court of Appeals for the

Eleventh Circuit held that "the Eighth Amendment violations Plaintiff alleges are

within the types of actions by prison officials that may, if proved, warrant

injunctive relief." *Doe v. Wooten*, No. 09-13707, 2010 WL 1645136, at *2 (11th

Cir. Apr. 26, 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 850-51 (1994)). In the present procedural posture, the ongoing violation of Plaintiff's Eighth Amendment rights is assumed.   The question raised by Defendants' motion is whether, as Defendants urge, the Court lacks power to provide Plaintiff with a remedy to prevent Defendants from continuing to act with deliberate indifference to a serious risk of harm to him in violation of his Eighth Amendment rights.

Controlling precedent holds that sovereign immunity "does not bar all actions seeking affirmative action by governmental officials" to remedy a constitutional violation.   *Saine v. Hospital Authority of Hall County*, 502 F.2d 1033, 1036 (5th Cir. 1974).   Thus, Defendants must demonstrate that special circumstances warrant sovereign immunity here because all of Plaintiff's requested relief falls within the narrow "exception to the exception" elucidated in *Saine*, where "the relief sought would work an intolerable burden on governmental functions, outweighing any consideration of private harm." *Id.* at 1037 (internal quotation marks omitted).   Defendants fall far short of meeting this standard.

First, the question whether Plaintiff's requested relief would impose an "intolerable burden . . . outweighing any consideration of private harm" is fact-based.   The Court of Appeals instructed that "[t]he burden to be considered is the burden that the record demonstrates would be imposed by the relief requested by

this Plaintiff and the harm to be considered is that harm that the record demonstrates this Plaintiff would suffer absent the requested relief." *Doe v. Wooten*, 2010 WL 1645136, at *2. Defendants implicitly admit the balancing test is fact dependent, repeatedly citing their own affidavits and documents of record. (*See, e.g.*, Defs. Supp. Br. at 11-15.)

Because Defendants have moved for summary judgment based on sovereign immunity, all factual disputes must be resolved and all reasonable factual inferences drawn in Plaintiff's favor. *See, e.g.*, *Kingsland v. City of Miami*, 382 F.3d 1220, 1225-26 (11th Cir. 2004). Yet Defendants disregard their burden and fail to address facts, discussed *infra*, demonstrating the appropriateness of the relief sought.

Second, Defendants misconstrue the "intolerable burden" standard. Their proposal that any requested relief "not agreeable" to federal officials be barred by sovereign immunity (*see* Defs. Supp. Br. at 10) lacks any merit.[2] Indeed, it cannot be squared with *Saine* itself, where the Fifth Circuit endorsed the holding of *Knox Hill Tenant Council v. Washington*, 448 F.2d 1045 (D.C. Cir. 1971). In *Knox Hill*, a suit against officials responsible for federally-owned housing, the D.C. Circuit

---

[2] Indeed, even if Defendants' dictionary approach had any merit, it shows that an "intolerable burden" is (according to the first definition of "intolerable") one "not capable of being borne or endured." (Defs. Supp. Br. at 10) Defendants cannot meet such a standard, for reasons discussed *infra*.

held that sovereign immunity did not bar either (1) a declaration that the defendants were "under a duty to repair and maintain [federally owned housing] in a decent, safe, and sanitary condition" or (2) issuance of "[i]njunctive relief to the same end," *id.* at 1048-49. Thus, although the requested injunctive relief – mandating the maintenance of housing in a "decent, safe, and sanitary condition" – necessitated affirmative action by federal officials that would place a burden on them, the D.C. Circuit expressly recognized (and the Fifth Circuit implicitly agreed) that the relief was not barred by sovereign immunity. *See id.* at 1051-52; *Saine*, 502 F.2d at 1036.[3]

Defendants' arguments are further contrary to *Farmer v. Brennan,* 511 U.S. 825 (1994). There, the Supreme Court remanded for further consideration the petitioner inmate's Eighth Amendment claim seeking "an injunction barring [her] future confinement in any penitentiary [*i.e.*, high-security BOP facility] including USP Terre Haute." *Id.* at 831, 850-51. In so doing, and in explaining the showing

---

[3] More recently, in *Clark v. Library of Congress*, 750 F.2d 89 (D.C. Cir. 1984), the D.C. Circuit held that sovereign immunity did not bar a plaintiff's requests for injunctive relief against the Library of Congress (to which the Administrative Procedures Act's waiver of sovereign immunity did not apply) including his request for reinstatement of his employment and correction of his personnel records, despite the considerable discretion government officials enjoy over personnel decisions. *See id.* at 92, 102. *Clark* demonstrates that sovereign immunity does not bar an action seeking, as a remedy for a constitutional violation, an injunction requiring a federal official to take what would otherwise be a discretionary action and one that entails some administrative burden.

a plaintiff must make to be entitled to such an injunction, *see id.* at 845-47, the Supreme Court suggested that sovereign immunity would not bar such a claim.

Third, Defendants present a legally erroneous analysis of "intolerable burden" by ignoring the harm to Plaintiff if the ongoing violation of his constitutional rights is left unremedied.  As the Eleventh Circuit held in this case, the relevant test is "whether the relief sought would work an intolerable burden on governmental functions, *outweighing any consideration of private harm.*"  *Doe v. Wooten*, 2010 WL 1645136, at *2 (quoting *Saine*, 502 F.2d at 1037) (emphasis added).  Here, the "private harm" is grievous and even potentially mortal physical injury to Plaintiff by persons who believe him to be a "snitch" for having cooperated in the investigation of a BOP officer.  Evidence of record establishes that Plaintiff has been repeatedly threatened and assaulted in high-security BOP facilities since he cooperated in the investigation of BOP officer at USP Atlanta in February 2004.  (*See, e.g.*, Ex. 1 at 33:16-45:18; Verified Compl. ¶¶ 21, 25, 33–35, 38; Ex. 2.)  Plaintiff fears that he will continue to be targeted for assault as long as he stays in a high-security BOP facility.  (*See, e.g.*, Ex. 1 at 46:23-50:11.)

Thus, Defendants engage in a faulty analysis of the "intolerable burden" standard.  Moreover, they fail to demonstrate that either form of relief requested by

Plaintiff to remedy Defendants' constitutional violations would impose an intolerable burden on governmental functions.

    **A.**    **Defendants Fail To Show that an Injunction Ordering that He Not Be Returned to a BOP Facility in Atlanta Would Impose "Undue Burden" on Defendants.**

Defendants fail to demonstrate that they would face an "intolerable burden" if ordered not to return Plaintiff to a BOP facility in Atlanta.  On the contrary, Defendants acknowledge that "plaintiff has not been at USP Atlanta in even an in-transit holdover status since November 2006."  (Defs. Supp. Br. at 12-13.)  Far from showing that the relief sought would impose an intolerable burden, this admission indicates that Plaintiff's requested relief could be implemented by the BOP without substantial burden.  The record reflects that the BOP has transferred Plaintiff multiple times in this period without returning him to Atlanta, undercutting Defendants' assertion that an order that Plaintiff not be returned to a BOP facility in Atlanta would impose an intolerable burden.

Moreover, Defendants' assertion that they would "have no authority to implement" an injunction prohibiting Plaintiff from being returned to a BOP facility in Atlanta lacks merit.  (Defs. Supp. Br. at 13-14.)  Defendants assert that they lack authority because a different subunit of the United States Department of

Justice, "JPATS" (a unit of the U.S. Marshals Service) handles prisoner transportation. (*Id.* & n.4) But this assertion is contradicted by Defendant Stover's own testimony. Defendant Stover admitted that he has the ability and authority to instruct the U.S. Marshals Service that particular BOP facilities should not be used as holdover facilities for inmates in transit. (Ex. 7 at 90:18-92:8.) Defendant Stover explained that such limitations on holdover facilities are commonly recorded in the BOP's Sentry database as a means of notifying the Marshals Service of restrictions on holdover facilities. (*Id.* at 89:20-92:8.) Thus, the record demonstrates that BOP officials can direct JPATS not to send inmates to particular BOP facilities simply by entering notes in a database, the SENTRY system. At the very least, there is a genuine dispute of material fact precluding summary judgment in Defendants' favor.

> **B.    Defendants Fail To Show that an Injunction Ordering that Plaintiff Be Placed in a Safe and Appropriate Facility Would Impose "Undue Burden" on Defendants.**

Defendants base their assertion of "intolerable burden" principally on a mischaracterization of the relief sought by Mr. Doe. The Verified Complaint requests an injunction ordering "an appropriate and safe housing placement *such as a medium or low security BOP facility or a state correctional facility.*" (Dkt. 1 (Compl.) at 18 (Prayer ¶ F) (emphasis added). The fact that three BOP wardens

have recommended Mr. Doe be placed in a medium-security BOP facility suggests that such a facility would be appropriate and easily available.  In any event, what Mr. Doe has requested is injunctive and declaratory relief establishing his right to be placed in a safe and appropriate facility.

Nevertheless, Defendants have addressed only one possible form of an order granting the requested relief.  They contend that an order requiring that Plaintiff be transferred to a medium-security BOP facility would impose an intolerable burden because, under BOP regulations, Plaintiff cannot be housed in such a facility due to his "public safety factor."  (Defs. Supp. Br. at 12-13.)  Defendants have failed to identify, however, any "intolerable burden outweighing any consideration of private harm" they would face to comply with such an order.  (*See* Defs. Supp. Br. at 14-17.)  Indeed, Defendants do not identify any burden other than a need for BOP officials to grant Plaintiff a safety factor waiver.

Significantly, Defendants ignore the fact that wardens of three BOP high-security facilities with access to Plaintiff's BOP file and expertise in managing BOP facilities have recommended that he be placed in a medium-security BOP facility.  (*See* Ex. 4 (Warden Johns at USP Coleman); Ex. 5 (Warden Norwood at USP Victorville); Ex. 6 (Warden Rios at USP Big Sandy).)  Their recommendations strongly suggest that such placement of Plaintiff is safe and

appropriate and would not impose an intolerable burden on the BOP.  At the very least, there is a genuine dispute of material fact about the burden of placing Plaintiff in a medium-security BOP facility, which precludes summary judgment based upon sovereign immunity.

Moreover, Defendants have not identified any burden that would *necessarily* result from Plaintiff's requested relief, which asks the Court to order "an appropriate and safe housing placement such as a medium or low security BOP facility or a state correctional facility."  (Dkt. 1 (Compl.) at 18 (Prayer ¶ F). Defendants have not identified any burdens that would flow from an order that Plaintiff be provided an appropriate and safe housing placement other than in a medium-security BOP facility.  By failing to identify any such burden, Defendants effectively concede that the relief requested would not necessarily impose an intolerable burden on governmental functions.

Plaintiff's requested relief would not require the Court to order that Plaintiff be transferred to a medium-security BOP facility if it were shown that – contrary to the recommendations of three BOP wardens – such an order would impose an intolerable burden on the BOP.  After considering all the evidence, the Court could order another safe and appropriate placement for Plaintiff such as placement in a

state facility (including a high-security state facility) or a witness-protection program.

Because Defendants have failed to demonstrate that the relief requested by Plaintiff would necessarily impose an intolerable burden on governmental functions, their request for summary judgment should be denied.

**C.     Defendants' Sovereign Immunity Argument Is Misplaced Because the Court Can Fashion an Appropriate Remedy, Taking into Account Any Well-Founded Burdens on Defendants, After the Record Is More Fully Developed.**

While there may be boundaries to the relief the Court can permissibly order to remedy the injury to Mr. Doe, elaboration of those boundaries is premature. *Cf. Knox Hill*, 448 F.2d at 1052 ("Whether such charges [of *ultra vires* conduct] are true, and, if so, what remedial action the court should or may direct, are questions partaking of the merits, and not of jurisdiction to explore the merits.") (footnote omitted). The Court has not yet been asked to fashion particular relief. Plaintiff has not yet been given discovery on the burdens the BOP would face in granting the requested relief, nor have Defendants articulated (much less substantiated) what the specific burdens would be. Defendants have yet to disclose even their reasons for refusing to place Plaintiff in a medium-security BOP facility as three BOP wardens have recommended, apart from the technical need for a security factor waiver to be granted. Plaintiff believes that targeted discovery requests and

depositions of BOP personnel, including a Rule 30(b)(6) deposition of the BOP, should provide the necessary discovery efficiently and promptly to allow the evidence to be presented to the Court for a resolution of the merits.

As the Supreme Court explained in *Bell v. Hood*, 327 U.S. 678 (1946), "it is established practice . . . to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution," *id.* at 684. "Where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Id.*

Plaintiff respectfully submits that, consistent with traditional equity principles, the Court can fashion appropriate relief here following a hearing where the parties present evidence concerning the need for the relief sought and the private and public factors implicated, including burdens that particular forms of relief would place on the BOP. Conversely, Defendants' contention that *any* injunctive relief that the Court could fashion would be precluded under *Saine* is untenable.

## III.   Plaintiff Has Exhausted Available Administrative Remedies

Defendants acknowledge that an inmate in the custody of the BOP exhausts administrative remedies through a three-level grievance process. (Defs. Supp. Br.

- 13 -

at 4.)  Defendants further admit that, on two separate occasions before filing the present lawsuit, Plaintiff exhausted administrative remedies available through the BOP.  (Defs. Supp. Br. at 5-6.)  In his first exhausted claim, Plaintiff asked to be placed in a facility where he could be kept safe – either a lower-security BOP facility, a BOP witness-protection program, or a state facility – in order to protect him from threats to his physical safety.  (*See* Exs. 8-10.)  In his second exhausted claim, Plaintiff notified authorities of his assault at USP Atlanta and informed them that he never should have been sent back to Atlanta.  (*See* Exs. 11-13.)  Each of these exhausted claims independently satisfies the exhaustion requirements of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

Plaintiff further exhausted a third grievance in July 2006 when Warden Norwood at USP Victorville granted his request for administrative remedy and recommended that Plaintiff be transferred to a medium-security BOP facility.  (*See* Exs. 5, 14.)  Plaintiff had filed a request for administrative remedy explaining that he should be placed in a medium-security BOP facility due to his cooperation in the investigation of Officer Fisher and threats to his safety.  In granting this request, Warden Norwood informed Plaintiff that his unit team would request "a lesser security transfer to a facility more commensurate with your custody and security needs."  (Ex. 5.)  When Plaintiff was told his request was granted and he

was promised the relief he sought, he had satisfied the administrative exhaustion requirement. *Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004) ("[I]t would be counterintuitive to require inmates who win during the grievance process to appeal their victories."); *Ross v. County of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004) ("Prisoners are not required to file additional complaints or appeal favorable decisions."), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *Almond v. Tarver*, 468 F. Supp. 2d 886, 897 (E.D. Tex. 2006). Indeed, there was no remedy left for Plaintiff to seek; only when Plaintiff was transferred to USP Big Sandy (through USP Atlanta) did he learn that the BOP was not providing the promised relief, and he then filed a new set of grievances that Defendants admit exhausted his administrative remedies. (*See* Exs. 8-10; Defs. Supp. Br. at 5.) Thus, Plaintiff's successful grievance also sufficed to exhaust administrative remedies. *Cf. Sulton v. Wright*, 265 F. Supp. 2d 292, 298-99 (S.D.N.Y. 2003) ("If a prisoner had to grieve non-compliance with favorable decisions under the PLRA, prison officials could keep prisoners out of court indefinitely by saying "yes" to their grievances and "no" in practice.").

Thus, the record shows that on three separate occasions Plaintiff sought relief from the BOP in a manner that exhausted administrative remedies on his claim concerning the ongoing violation of his Eighth Amendment rights.

Defendants nonetheless assert that Plaintiff failed to satisfy the PLRA's exhaustion requirement because he did not specifically state in his grievances that his designation to a high-security facility was unconstitutional.[4]  (Defs. Supp. Br. at 5.)  This argument lacks merit, for it is well established that a prisoner need not present specific *legal theories* in a grievance.  "As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief.   All the grievance need do is object intelligible to some asserted shortcoming."  *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002); *see also Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009); *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006); *Johnson v. Johnson*, 385 F.3d 503, 518 (5th Cir. 2004) ("[T]here is authority from several courts to the effect that a prisoner, who is of course typically uncounselled, need not present legal theories in his grievances. We agree.") (internal citations omitted).

Indeed, the PLRA's exhaustion requirement is intended to provide prison officials an opportunity to address disputes before a lawsuit is filed.  *Jones v. Bock*, 549 U.S. 199, 914 (2007).  The theory underlying this requirement is that litigation

---

[4] Defendants do not assert that Plaintiff has failed to exhaust his request for a Management Variable or Public Safety Factor waiver, which would have entitled him to be transferred to a lower-security BOP facility.  Nor could they, since none of the responses to Plaintiff's numerous grievances notified him that he had not received such a waiver.  A prisoner is only required to provide as much relevant information in his administrative grievance "as the prisoner reasonably can provide."  *Brown v. Sikes*, 212 F.3d 1205, 1210 (11th Cir. 2000).

- 16 -

may be prevented if the dispute is resolved, and if the dispute proceeds to litigation, the administrative process may clarify the controversy. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008). Here, Plaintiff repeatedly presented his requests for relief at all levels permitted by the BOP. He repeatedly provided BOP officials an opportunity to address his claim that he was unsafe in high-security federal prisons and that he needed to be transferred to a safe and appropriate facility, whether a medium-security federal facility or a state facility. A BOP even warden purported to grant Plaintiff his requested relief, only for the BOP to inexplicably disregard its warden's recommendation.

Defendants fail to refute that Plaintiff's grievances adequately stated the basic facts underlying his claim for injunctive relief. Plaintiff not only asked to be placed in a medium-security facility, state prison or witness protection program, but he explained that he could not be kept safe in a high-security BOP facility:

- "I'm requesting to be either sent to a FCI or put in the BOP witness protection program or sent to a state prison from further harassment." (Ex. 8.)

- "At each USP I was force to be put in the [special housing unit] as a result of the SIS investigation in Atlanta. . . . I am requesting that I be sent to a FCI so I can have a safe chance of staying in population. Or be sent to a state prison. Or be put in the BOP witness protection program." (Ex. 9.)

- "Every day at USP Big Sandy is a challenge to avoid other inmates coming from former USP Atlanta.  My safty [sic] is at risk every day of rumors from inmates who was at Atlanta.  I would not have this problem of fear or physical danger to me at a medium level prison."  (Ex. 10.)

Defendants also err in asserting that, while Plaintiff exhausted remedies regarding his assault by BOP staff member at USP Atlanta, he failed to exhaust remedies for a claim to prevent his return to Atlanta.  (Defs. Supp. Br. at 6.) Defendants' assertion is misplaced as a matter of law, because a prisoner is required to exhaust *claims*, not the specific relief sought.  It is well established that a prisoner need not "demand particular relief" in order to exhaust administrative remedies.  *Strong*, 297 F.3d at 650; *see also Sample v. Lappin*, 424 F. Supp. 2d 187, 191 (D.D.C. 2006) ("Plaintiff's obligation to exhaust his administrative remedies does not require that he posit every conceivable alternative means by which to achieve his goal."); *see generally Booth v. Churner*, 532 U.S. 731 (2001) (holding that the applicability of the exhaustion requirement turns on whether the grievance system addresses the prisoner's complaint, not whether it provides the remedy that the prisoner prefers).

Moreover, Defendants' assertion that Plaintiff failed to exhaust remedies for a claim to prevent his return to Atlanta is contrary to the record.  Plaintiff specifically complained that he should not be returned to Atlanta due to his

cooperation in an investigation of a BOP officer there.   In his Request for

Administrative Remedy, Plaintiff expressly stated:

> On 11-20-06 I came to the holdover from OTC to await transfer to
> USP Big Sandy.  *I was not to go to Atlanta again* because I was
> involve in a investigation that resulted in a officer being terminated.

(Ex. 11.)  When this Request was denied, Plaintiff appealed and stated that he was

"dissatisfied" with the response he received, (Ex. 12), thereby incorporating his

complaints regarding his transfer through USP Atlanta into this appeal.  In his final

appeal to the Central Office, Plaintiff again stated that:

> As a result of SIS investigation I was involved in at then USP Atlanta
> on 2-5-04, that resulted in a officer resigning, I was assured by SIS
> Atlanta officials I would be sent to a   FCI for my safty [sic] and *not*
> *ever return to Atlanta*.   On 11-20-06 I went to Atlanta as a
> holdover.

(Ex. 13.)  Thus, through a grievance that Defendants admit was fully exhausted,

Plaintiff specifically complained of being sent through the BOP facility in Atlanta

and placed BOP officials on notice of why he would be in danger there.

Defendants' supplemental brief underscores that, in their effort to have

Plaintiff's claim dismissed, Defendants are improperly demanding of Plaintiff

greater specificity and legal sophistication in his grievances than BOP regulations

require.  The Supreme Court has made clear that "[t]he level of detail necessary in

a grievance to comply with the grievance procedures will vary from system to

system and claim to claim, but it is the prison's requirements, and not the PLRA, that defines the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. Plaintiff met the requirements of the BOP's Administrative Remedy Program, the requirements relevant here. According to the BOP Program Statement on the Administrative Remedy Program, inmates must complete complaint forms "with [1] all requested identifying information and [2] shall state the complaint in the space provided on the form." (Ex. 15 (Program Statement) at 7.) The only "requested identifying information" on the form relevant here asks for the inmate's name, register number, unit, and institution. (*See*, *e.g.*, Ex. 8.) Neither the relevant form nor the BOP Program Statement identifies information an inmate must provide besides this identifying information and a statement of the inmate's complaint. "When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong*, 297 F.3d at 650 (7th Cir. 2002); *see also Kikumura v. Osagie*, 461 F.3d 1269, 1283 (10th Cir. 2006); *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004); *Priester v. Rich*, 457 F. Supp. 2d 1369, 1372 (S.D. Ga. 2006). Through the series of exhausted grievances described above, Plaintiff indisputably stated his complaint and properly notified the BOP of the bases for his constitutional claim – his continued placement in high-security facilities where he could not be kept safe

rather than in medium-security facilities, state facilities, or a witness protection program; and that he should not have been transferred to or through Atlanta – offering the BOP the opportunity to resolves these issues administratively.  *Cf. Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (stating that the PLRA exhaustion requirement "seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case") (internal quotation and citation omitted).  Thus, Plaintiff exhausted his claim for injunctive and declaratory relief in this case.

## IV.   Conclusion

For the foregoing reasons, and those stated in Plaintiff's Opposition to the Official Capacity Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment, Plaintiff respectfully requests that the Court deny Defendants' motion and permit Plaintiff to take targeted discovery before an evidentiary hearing on the merits of his claims.

Dated:        July 6, 2010

                                        Respectfully submitted,

                                         /s/ Jeffrey Lerner
                                        Jeffrey H. Lerner

Thomas L. Cubbage III*                  David L. Balser
Jeffrey H. Lerner*                      MCKENNA LONG & ALDRIDGE LLP
COVINGTON & BURLING LLP                 303 Peachtree St., NE
1201 Pennsylvania Ave., NW              Suite 5300
Washington, DC 20004                    Atlanta, GA 30308
(202) 662-6000                          (404) 527-4000
*admitted *pro hac vice*

Mari K. Bonthuis*                       Philip Fornaci*
COVINGTON & BURLING LLP                 D.C. Prisoners' Project
620 Eighth Avenue                       Washington Lawyers' Committee for
New York NY 10018                           Civil Rights & Urban Affairs
(212) 841-1000                          11 Dupont Circle, Suite 400
*admitted *pro hac vice*                Washington, DC 20036
                                        (202) 319-1000
                                        *admitted *pro hac vice*

Pursuant to Local Rule 7.1D, I hereby certify that the above document has been prepared in Times New Roman font and point 14 as required by Local Rule 5.1.

                                         /s/ Jeffrey Lerner
                                        Jeffrey H. Lerner

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____

JOHN DOE,                                :
                                         :
            Plaintiff,                    :
                                         :        Civil Action No.
      v.                                  :        1:07-CV-2764-RWS
                                         :
OFFICER WOOTEN, in his individual        :
capacity, WARDEN R. WILEY, in his        :
individual and official capacities, RICK :
STOVER, in his individual and official   :
capacities, and FEDERAL BUREAU OF        :
PRISON DIRECTOR HARLEY LAPPIN,           :
in his official capacity.                 :
                                         :
            Defendants.                   :
_____:

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 6th of July, 2010 filed electronically the foregoing PLAINTIFF JOHN DOE'S SUPPLEMENTAL OPPOSITION TO OFFICIAL CAPACITY DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT upon the counsel listed below via the Court's electronic filing system:

R. David Powell
Assistant United States Attorney
600 Richard Russell Building
75 Spring Street, S.W.
Atlanta, GA 30303

/s/ Jeffrey H. Lerner