IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOHN DOE, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:07-CV-2764-RWS |
| OFFICER WOOTEN, in his individual : | |
| capacity, WARDEN R. WILEY, in his : | |
| individual and official capacities, : | |
| RICK STOVER, in his individual and : | |
| official capacities, and FEDERAL : | |
| BUREAU OF PRISON DIRECTOR : | |
| HARLEY LAPPIN, in his official : | |
| capacity. : | |
| : | |
| Defendants. : | |

## **ORDER**

The United States Court of Appeals for the Eleventh Circuit remanded this case to this Court by Order filed April 26, 2010 (hereinafter, "Remand Order"), which was made the judgment of this Court by Order dated June 1, 2010. (Dkt. No. 118)

On remand, the Court of Appeals directed this Court to address two issues: (1) whether Plaintiff has exhausted administrative remedies on the claims against Defendants Lappin and Stover in their official capacity, and (2)

whether the injunctive relief requested by Plaintiff would "work an intolerable burden on government functions, outweighing any consideration of private harm." See Saine v Hosp. Auth., 502 F.2d 1033, 1036-37 (5th Cir. 1974).[1]  At the Court's request, the Parties submitted supplemental briefs on the two issues. The Court shall now address each in turn.

## I.  Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 . . ., or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted."  This section mandates exhaustion of a prisoner's administrative remedies and courts do not have discretion to waive the exhaustion requirement. Booth v. Churner, 532 U.S. 731, 741 n.6 (2001); Bryant v. Rich, 530 F.3d 1368, 1372-73 (11th Cir.), cert. denied, 129 U.S. 733, 129 S. Ct. 733 (2008); Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).  Moreover, even if a prisoner has initiated a

---

[1] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981, and all Fifth Circuit Unit B decisions after October 1, 1981. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc); Stein v. Reynolds Secs., Inc. , 667 F.2d 33, 33 (11th Cir. 1982).

2

grievance procedure, he must fully complete that process before filing a lawsuit. See Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) (holding prisoner required to seek leave to file out-of-time grievance appeal prior to bringing suit). Although the PLRA's exhaustion requirement technically applies to those actions brought by prisoners "with respect to prison conditions," 42 U.S.C. § 1997e(a), the expansive reading given the exhaustion requirement effectively results in its application to all prisoner suits with respect to the effects of actions by government officials on the lives of persons confined in prison. Dillard v. Jones, 89 F. Supp. 2d 1362, 1368 (N.D. Ga. 2000) (Forrester, J.), aff'd, 46 F. App'x 617 (11th Cir. 2002).

The Federal Bureau of Prisons ("BOP") has created the Administrative Remedy Program ["ARP"]; this three-step process allows inmates to "seek formal review of an issue which relates to any aspect of their confinement . . ." Initially, a prisoner must attempt to informally resolve his complaint with BOP staff. 28 C.F.R. § 542.13(a). If these attempts fail, the prisoner may then file a Request for Administrative Remedy (BP-9 form) and submit it to the warden within twenty days "following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14. "Where the inmate demonstrates a valid reason

3

for delay, an extension in filing time may be allowed." 28 C.F.R. § 542.14. If not satisfied with the response of the Regional Director, the inmate may submit another appeal, using the appropriate form, to the BOP's General Counsel. 28 C.F.R. § 542.15(a). The prisoner may file this initial request directly with the regional director instead of the warden, however, "[i]f the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution." 28 C.F.R. § 542.14(d)(1). Proper exhaustion requires timely appeal through all levels, including to the General Counsel that complies with BOP regulations so that it is decided on the merits at all levels.

     Plaintiff presents two claims that must have been properly exhausted prior to the initiation of this suit: (1) that he faces a risk of harm because he has been designated to high security level institutions instead of lower security or state facilities, and (2) that he faces a risk of harm if he is ever placed in USP Atlanta by designation or in transit between other facilities. Defendants contend that Plaintiff has not exhausted either claim.

4

A.   Designation to a Lower Security Facility

As to the first constitutional claim, seeking designation to a lower security facility or BOP witness protection program, Defendants contend that Plaintiff only exhausted the claim that he should be transferred because he was promised such a designation. (Dkt. No. [121] at 5.)  However, the issue before the Court is not the promised designation, but the alleged constitutional Eighth Amendment violation arising out of Plaintiff's placement at a high security facility.  Defendants argue that Plaintiff has "not submitted administrative remedies raising his claim concerning the constitutionality of his designation to a high security facility as opposed to lower security or state facilities or a witness protection program, and thus has not exhausted this claim." (Id. at 6.)

The Court has thoroughly reviewed Plaintiff's grievances and complaints to the BOP concerning his high security designation.  Plaintiff does indeed mention in his filings that he has been promised a lower security designation of placement in a BOP witness protection program in exchange for his undercover investigation participation. (See Dkt. [122] Exhs. 8-10.)  However, Plaintiff further unequivocally states that he is subject to harassment and unsafe conditions in a high security facility.  He mentions that his safety is at risk and

5

AO 72A
(Rev.8/82)

that he fears bodily harm due to his label as a "snitch" in the general population. (Id.)

"Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones v. Bock, 549 U.S. 199, 202 (2007).  A prisoner need not present a specific legal theory or constitutionally grounded basis for his requested relief.  Rather, all that is required is that the prisoner articulate a specific deficiency and place the officials on notice of the area of concern.  Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002) ("As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief.  All the grievance need do is object intelligibly to some asserted shortcoming.")  There is no doubt that the BOP was placed on notice that Plaintiff feared for his safety in his current conditions.  In complying with the three level process, Plaintiff provided BOP officials with an opportunity to address his claim that he was in an unsafe environment. "[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Id.  Were Plaintiff to have *only* stated in his grievances that he had been promised a lower security designation, then Defendants' argument may have merit.  However, Plaintiff

6

repeatedly states that he fears for his safety in the high security facility. While not specifically articulating a claim under the Eighth Amendment of the United States Constitution, Plaintiff is clearly contending that his detention constitutes cruel and unusual punishment. The Court finds that Plaintiff has exhausted his claim regarding the constitutionality of his placement in a high security facility.

### B.   Transfer To and Through USP Atlanta

Plaintiff's second claim seeks to require the BOP to insure that he is never returned to USP Atlanta either by redesignation or as a holdover in transit. He alleges that Defendants have violated his constitutional rights by failing to protect him from retaliation and bodily harm after his undercover investigation of a BOP official in Atlanta. (See Complaint.) Defendants concede that Plaintiff has exhausted a claim for damages based on his allegation of assault by USP Atlanta staff, but argue that he has not exhausted remedies for a request that the BOP insure that he is never returned to USP Atlanta, either by redesignation or as a holdover. (Dkt. No. [121] at 6.) Upon review, the Court finds that Plaintiff specifically complained about the treatment he received while at USP Atlanta and stated that he was not supposed to return to that facility. (Dkt. No. [122] Exhs. 11, 13.) A prisoner is not required to

7

exhaust a specific relief sought. By placing the BOP on notice that the alleged conduct occurred while in holdover at USP, Plaintiff trusts that officials will fashion a remedy that adequately and completely addresses Plaintiff's concerns. BOP officials were made aware of the danger posed to Plaintiff at USP Atlanta and why he should not be sent through the facility. The Court finds such grievances adequate to have met the exhaustion requirement on Plaintiff's second constitutional claim.

Accordingly, Plaintiff has exhausted all claims presently before the Court.

## II.     Requested Injunctive Relief

Having found proper exhaustion, the Court must now determine whether the injunctive relief requested by Plaintiff is appropriate under legal precedent. The Circuit Court found that "a plaintiff may be able to obtain injunctive relief against a federal officer acting in his official capacity when the officer acts beyond statutory or constitutional limitations," (Dkt. No. [117] at 4) (citing Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949); Saine v. Hosp. Auth., 502 F.2d 1033, 1036-37 (5th Cir. 1974)). The court then held "that the Eighth Amendment violations Plaintiff alleges are within the types of

8

AO 72A
(Rev.8/82)

actions by prison officials that may, if proved, warrant injunctive relief." (Id.) Given such guidance, the Court must now "perform the balancing analysis required by ... precedent." (Id. at 5.) The question before the Court is whether "the relief sought would work an intolerable burden on governmental functions, outweighing any consideration of private harm." Saine v. Hospital Authority of Hall County, 502 F.2d 1033, 1037 (5th Cir. 1974).

Plaintiff requests two forms of injunctive relief: (1) an injunction preventing Defendants from placing Doe in or transporting him to the BOP facility in Atlanta; and (2) an injunction requiring Defendants to have Doe removed from a high security BOP facility and placed either in a medium security BOP facility (besides Atlanta), a state prison facility, or in a BOP witness protection program. (Dkt. No. [122] at 3.)

### A. Injunctive Relief from Transfers To and Through USP Atlanta

Defendants contend that both of Plaintiff's requested injunctive relief pose intolerable burdens on the BOP. (Dkt. No. [121] at 12.) As for the injunctive relief permanently enjoining Defendants from transporting Plaintiff to or through any Atlanta BOP facility, Defendants claim that such request is moot. They argue that the Plaintiff has not been designated to USP Atlanta

9

(Rev.8/82)

since 2004 and that future designation is impossible since USP Atlanta is a medium security facility and Plaintiff is classified at a high security level. (Id.) Further, Defendants contend that prisoner transportation scheduling is handled through the United States Marshals Service's Justice Prisoner and Alien Transportation System ("JPATS"). (Id. at 13-14.)  As such, the named Defendants are not involved in decisions concerning Plaintiff's transportation. Given that the Plaintiff faces minimal risk of placement at or through USP Atlanta and the logistical consideration of prisoner transport, Defendants argue that the balancing scale favors denial of the injunctive relief.

As for Plaintiff's first request that he not be transferred to or through USP Atlanta, the Court finds that the balancing factors weigh in Plaintiff's favor.  Plaintiff has described in great detail the harm that he perceives he faces if he is transferred to or through Atlanta.  Plaintiff contends that he fears both bodily harm and/or mental anguish from officials and other inmates due to his participation in the undercover investigation.  On the other side, the fact that Plaintiff has been transferred multiple times to several different facilities since the incident without returning to Atlanta demonstrates that avoiding USP Atlanta does not pose a large burden on the BOP. (Dkt. No. [122] at 8.)

Further, Defendant Stover admitted that special transfer and transportation limitations are often recorded in the BOP's Sentry database and place BOP officials on notice of facilities where an inmate may not be placed. (Stover Dep. pp. 89-92.) The Court sees no reason why the BOP could not place a PP10 reference in Plaintiff's file alerting all officials that Plaintiff must not be transferred to or through USP Atlanta in the future. Plaintiff faces these alleged dangers and threats because he voluntarily cooperated with prison officials in order to expose the corrupt actions of a BOP official in a high security facility. As part of the investigation, Plaintiff even wore a wire in order to provide the officials with sufficient evidence. In light of Plaintiff's cooperation and the harm he alleges, the Court finds that an injunction barring Defendants from transporting Doe to or through Atlanta does not pose an intolerable burden.

### B.  Placement in a Lower Security Facility

Defendants argue that placing Plaintiff in a medium security BOP facility or a state corrections facility would amount to an intolerable burden. First, Defendants contend that the record does not show that Plaintiff's physical safety has been threatened since his transfer from USP Big Sandy. (Id. at 15.) Further, according to BOP Public Safety Factors (PSF), Plaintiff's conviction

11

for armed robbery and life sentence dictate that he must be assigned to a high security facility and cannot be placed in a medium security facility. (Id.) In order to comply with Plaintiff's requested relief, "[t]he BOP would [] be required to classify and designate plaintiff to facilities for which the BOP had determined his placement is not appropriate, creating an increased risk to the community by his placement in less secure facilities with increased access to the public." (Id.) Finally, Defendants argue that granting the requested injunctive relief would place the Court in a position of micro-managing the BOP's authority of determining housing factors. (Id. at 17.)

The record demonstrates that wardens from three BOP high security facilities have recommended that Plaintiff be placed in a medium security facility. (Dkt. No. [122], Ex. 4 (Warden Johns at USP Coleman); Ex. 5 (Warden Norwood at USP Victorville); Ex. 6 (Warden Rios at USP Big Sandy).) Their recommendation is based on the security risks that Plaintiff faces in a high security facility. The private harm to Plaintiff is well documented. The fact that the wardens have recommended this reassignment suggests that the BOP is quite capable of providing Plaintiff with a security factor waiver without great burden and that such placement would not result in

12

great risk to either Plaintiff or other inmates. The Court does not intend to "micro manage" the BOP's authority to place inmates in facilities most commensurate with their security needs. However, in this situation, the Court finds that Defendants have not identified any burdens that would flow from an order that Plaintiff be provided an appropriate and safe housing placement other than in a high security BOP facility.

Accordingly, the Court finds that Plaintiff's requested injunctive relief does not pose an intolerable burden on government functions outweighing the private harm alleged by Plaintiff.

## Conclusion

This case was remanded back to the Court for determination of: (1) whether Plaintiff has exhausted administrative remedies on the claims against Defendants Lappin and Stover in their official capacity, and (2) whether the injunction relief requested by Plaintiff would work an intolerable burden on government functions, outweighing any consideration of private harm. The Court finds that Plaintiff has exhausted administrative remedies as to all claims presently before the Court. Further, the requested injunctive relief does not pose an intolerable burden on governmental functions.

13

Based on the foregoing, Defendants' Motion for Summary Judgment as to Official Capacity Defendants [56] is **DENIED.**

Within thirty (30) days of the entry of this Order, the parties shall submit a proposed consolidated pretrial order to the Court.

**SO ORDERED** this   16th   day of July, 2010.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE