*John Doe v. Rick Stover, in His Official Capacity, et al.*,
Civil Action No. 1:07-CV-2764-RLV (N.D. Ga.)

**ATTACHMENTS TO PRETRIAL ORDER**

---

**Attachment D**

**Official Capacity Defendants' Outline of the Case**

Plaintiff, identified as John Doe in this litigation, is a prisoner in custody of the Federal Bureau of Prisons ("BOP"), and is currently housed at USP Coleman II, which houses offenders requiring his security controls (e.g., violent offenders). Plaintiff is serving consecutive sentences imposed by the Superior Court of the District of Columbia on October 24, 1996, of 15 years to life for armed robbery and five to fifteen years for possession of a firearm during a crime of violence, His projected release date is October 7, 2019. He will first be eligible for parole consideration in 2015. Plaintiff was transferred to the custody of the BOP to serve his sentence in 2001.

In November 2003, Doe made allegations that former Inmate Systems Officer Willie Fisher had allowed Doe to receive contraband shipments over a year-long period, had received payments on most of the parcels he allowed Doe to receive, and had abused Doe by having Doe perform oral sex on him. Doe explained that he is homosexual and had  Doe agreed to assist with the subsequent investigation of Fisher, which involved a controlled delivery and recording of Doe's conversations with Fisher. During the course of the investigation, Fisher admitted allowing Doe to receive some contraband but denied other allegations, and Doe admitted that Fisher had not taken any payments in the past, Fisher did not knowingly allow introduction of cell phones, and did not sexually abuse Doe.  Fisher resigned in lieu of being placed on paid administrative leave.

*John Doe v. Rick Stover, in His Official Capacity, et al.*,
Civil Action No. 1:07-CV-2764-RLV (N.D. Ga.)

**ATTACHMENTS TO PRETRIAL ORDER**

---

Plaintiff was moved to FCI Talladega until the investigation was concluded. He remained in administrative detention while at that facility. While at FCI Talladega, plaintiff started to advance a claim that officials investigating Fisher promised him designation to a medium security facility and he wanted BOP to honor the promise.

Plaintiff was redesignated to USP Coleman in August 2004. While at USP Coleman, plaintiff engaged in consensual sexual acts with cellmates on multiple occasions. Doe later refused a request for more sex in March 2005, but had sex after his cellmate assaulted him. Doe requested protective custody, resulting in separatee designation and Doe's placement in segregation pending a transfer.

In December 2005, Doe was placed at USP Atlanta in holdover status, separate from the general population, but complained about being placed there and was moved 15 hours after his arrival. Doe arrived at his designated facility, USP Florence in January 2006, where he was placed in SHU until another transfer resulted in his move to USP Victorville in May 2006.

In late December, 2005, Defendant Stover was transferred to the newly created Designation and Sentence Computation Center (DSCC) in Grand Prairie, Texas. The DSCC assumed designation duties for most inmates in January 2006. As a result, Defendant Stover was assigned to process the transfer request for Doe that resulted in his transfer in to Victorville in May 2006.

*John Doe v. Rick Stover, in His Official Capacity, et al.*,
Civil Action No. 1:07-CV-2764-RLV (N.D. Ga.)

**ATTACHMENTS TO PRETRIAL ORDER**

---

At Victorville, plaintiff requested protective custody, and submitted a request for transfer.  In November, 2006, Defendant Stover was again assigned a transfer request for Doe, and redesignated him to USP Big Sandy.  Once a redesignation was made, the warden at Victorville entered a transfer order, which was forwarded electronically to JPATS, a function of the U.S. Marshals Service that has responsibility for prisoner movement.

JPATS determined that plaintiff must be placed in a holdover status during his movement, and left him with USP Atlanta.  Defendant Stover had no input into the route selected by JPATS or its decision to use USP Atlanta as a holdover facility for Doe.

Upon arrival at USP Atlanta, plaintiff was belligerent to prison staff while being processed in, and later alleged that Officer Wooten assaulted him.  Plaintiff received medical examinations at the prison and at South Fulton Medical Center.  There was no medical evidence to support plaintiff's claim against Wooten and other staff disclosed that Wooten was not responsible for processing plaintiff into the facility.  Plaintiff was then moved on to USP Big Sandy, where in September 2007 he again alleged assault by another inmate.

Plaintiff filed suit against the defendants on November 7, 2007, alleging that the defendants, while acting within there official capacity, engaged in acts or omissions that constituted deliberate indifference to his safety, and that he is entitled to injunctive relief.  The appeals court identified plaintiff's claims against these

*John Doe v. Rick Stover, in His Official Capacity, et al.*,
Civil Action No. 1:07-CV-2764-RLV (N.D. Ga.)

**ATTACHMENTS TO PRETRIAL ORDER**

---

defendants as allegations that they "violated the Plaintiff's Eighth Amendment right against cruel and unusual punishment by acting with deliberate indifference in failing to protect Plaintiff from retaliation after he participated in the investigation of a Bureau of Prisons officer in Atlanta, Georgia."  Plaintiff seeks "an injunction 'permanently enjoining Defendants from transporting Mr. Doe to or through any BOP facility in Atlanta' and requiring the transfer of Mr. Doe to an appropriate and safe housing placement such as a medium or low security BOP facility or a state correctional facility.'"  The Eleventh Circuit Court of Appeals held that "a plaintiff may be able to obtain injunctive relief against a federal officer acting in his official capacity when the officer acts beyond statutory or constitutional limitations," and remanded plaintiff's official capacity constitutional claims.

Defendants were not involved in, or even aware of, Doe or his transfers and allegations against Wooten until they received notice of this lawsuit.  Defendant Stover did process transfer requests for plaintiff beginning in 2006, but did not designate plaintiff to USP Atlanta.  There is no indication of any involvement of Defendant Lappin beyond respondeat superior theories.  However, any conduct attributable to his was not ultra vires or otherwise beyond his legal authority. Similarly, none of Defendant Stover's decisions were performed in an ultra vires manner.

*John Doe v. Rick Stover, in His Official Capacity, et al.*,
Civil Action No. 1:07-CV-2764-RLV (N.D. Ga.)

**ATTACHMENTS TO PRETRIAL ORDER**

After filing suit, plaintiff has been transferred to other high security facilities, including two facilities he expressly requested in administrative remedies. Due to plaintiff's involvement in fights or self referral to segregation, he has been placed in segregation until either being ordered to return to general population or being designated to have additional separatees and transferred to a facility with no separatees. Plaintiff programmed well in general population at USP Lewisburg until that facility's medical treatment designation changed and Doe had to be transferred to a facility capable of meeting his medical needs.

**Legal Standards Applicable to Defendants' Case**

Defendants rely upon the following statutes and authorities, and the cited case law construing them as representative of the law applicable to this case:

United States Constitution amend. VIII

Dugan v. Rank, 372 U.S. 609 (1963)

Farmer v. Brennan, 511 U.S. 825, 834 (1994)

Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949)

Saine v. Hosp. Auth., 502 F.2d 1033, 1036-37 (5th Cir. 1974)

Zapata v. Smith, 437 F.2d 1024, 1025 (5th Cir. 1971)

Taylor v. Cohen, 405 F.2d 277, 281 (CA 4, 1968)