IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| JOHN DOE, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 1:07-CV-2764-RWS |
| | : | |
| v. | : | |
| | : | |
| RICK STOVER, in his official capacity, | : | |
| and FEDERAL BUREAU OF PRISONS | : | |
| DIRECTOR HARLEY LAPPIN, in his | : | |
| official capacity, | : | |
| | | |
| Defendants. | | |

## ATTACHMENT H-1 TO PRE-TRIAL ORDER: PLAINTIFF'S TRIAL BRIEF

Plaintiff anticipates that the following legal issues may arise at trial.

## I.     DELIBERATE INDIFFERENCE TO A SERIOUS RISK OF HARM TO AN INMATE VIOLATES THE EIGHTH AMENDMENT

"A prison official's 'deliberate indifference' to a substantial risk of

serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*,

511 U.S. 825, 828 (1994).  Deliberate indifference may be shown by prison

officials' failure to transfer a prisoner despite known dangers to him, *e.g.*,

*Longoria v. Texas*, 473 F.3d 586, 595 (5th Cir. 2006); *Hamilton v. Leavy*, 117 F.3d

742, 747-48 (3d Cir. 1997); and by the transfer of a prisoner with deliberate

indifference to a risk of harm to him, *e.g.*, *Jacobs v. Angelone*, 107 F.3d 877 (9th Cir. 1997) (unpublished).

Moreover, where prison officials "us[e] the plaintiff inmate as a 'snitch,'" they bear "a higher level of . . . responsibility for the risks facing that particular inmate." *Carter v. Galloway*, 352 F.3d 1346, 1350 n.9 (11th Cir. 2003); *see also Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 31, 1981) (holding that where an inmate cooperates in an official prison investigation, "it does violate the constitutional proscription against cruel and unusual punishment to fail to afford that inmate reasonable protection.").

### A. Courts Have Recognized That Inmates Considered To Be "Snitches" Face a Substantial Risk of Serious Harm.

It is well-recognized that an inmate labeled a "snitch" faces life-threatening retaliation by other inmates. *See, e.g.*, *Irving v. Dormire*, 519 F.3d 441, 451 (8th Cir. 2008) ("[W]e have previously recognized that an inmate who is considered to be a snitch is in danger of being assaulted or killed by other inmates."); *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) (collecting cases recognizing that "labeling an inmate a snitch has the potential for great harm and may violate constitutional guarantees"); *Comstock v. McCrary*, 273 F.3d 693, 699 n.2 (6th Cir. 2001) (explaining that "[b]eing labeled a 'snitch' was dreaded, because it could make the inmate a target for other prisoners' attacks");

*Reese v. Groose*, 60 F.3d 487, 488 (8th Cir. 1995) (explaining that a reputation as a snitch places an inmate "at a substantial risk of injury at [other inmates'] hands"); *Gullatte*, 654 F.2d at 1010; *David v. Hill*, 401 F. Supp. 2d 749, 756 (S.D. Tex. 2005) ("Courts have long recognized that being labeled a 'snitch' in the prison environment can indeed pose a threat to an inmate's health and safety in violation of the Eighth Amendment."). As the pre-split Fifth Circuit observed, "the life of a 'snitch' in a penitentiary is not very healthy." *United States v. Henderson*, 565 F.2d 900, 905 (5th Cir. 1978).

Moreover, the Supreme Court made clear in *Farmer* that with respect to the serious risk of harm, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843 (citation omitted).

**B.     The Deliberate Indifference Standard**

"Deliberate indifference" is shown where an official "knows that [an] inmat[e] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; *see Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc); *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (Once "officials become aware of a threat to an inmate's health and safety, the eighth amendment's proscription

against cruel and unusual punishment imposes a duty to provide reasonable protection.").

Deliberate indifference is shown through evidence of prison officials' "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010). "That is, the evidence must demonstrate that 'with knowledge of the infirm conditions, [the official] knowingly or recklessly declined to take actions that would have improved the conditions.'" *Id.* (citation omitted). "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842; *Thomas*, 614 F.3d at 1312.

Whether a prison official knows of a substantial risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 837 (citations omitted). Thus, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* If a plaintiff "presents evidence showing that a substantial risk . . . was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the

risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Id.* at 842-43 (internal quotation marks omitted). Further, where the risk to an inmate is obvious, a defendant "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id.* at 843 n.8.

Deliberate indifference "should be determined in light of the prison authorities' current attitudes and conduct." *Farmer*, 511 U.S. at 845 (internal quotation marks omitted). Thus, in considering an injunction, a court "may rely . . . on developments that postdate the pleadings." *Id.* "If, for example, the evidence before a district court establishes that an inmate faces an objectively intolerable risk of serious injury, the defendants could not plausibly persist in claiming lack of awareness . . . ." *Id.* n.9.

Moreover, when a defendant is sued in his official rather than personal capacity, deliberate indifference should be measured by the knowledge of the office that the defendant holds rather than the defendant's personal knowledge. Official capacity suits are effectively suits against the official's office rather than against the official personally. Thus, for example, "when officials sued in [their official] capacity in federal court die or leave office, their successors automatically

5

assume roles in the litigation."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also*
Federal Rule of Civil Procedure 25(d)(1) (automatic substitution for public
officials sued in their official capacities if they die, resign, or cease to hold office
while action is pending); *Thomas*, 614 F.3d at 1316 n. 27 (recognizing in a
conditions-of-confinement case that "defendants were sued in their official, not
their individual capacities, and it is only in their official capacities that they are
constrained by the district court" and that it is immaterial that "the individuals now
holding those offices may not be the same as those in office when this suit was
commenced").  That an official capacity defendant may be substituted during the
course of litigation suggests that a plaintiff need not establish that the official
named as a defendant himself has subjective knowledge of the serious risk of harm
to the inmate.  *Cf. Thomas*, 614 F.3d at 1315 n. 26 (explaining that evidence that an
official capacity defendant had "subjective knowledge of a serious risk of . . .
harm" not to the plaintiff but "to inmates *like* [plaintiff]" could establish deliberate
indifference) (emphasis added).  Rather, in an official capacity suit, the relevant
inquiry is whether the information available to the official's office (*i.e.*, to the BOP
here) demonstrates awareness of the serious risk of harm to the inmate.

## C.     Deliberate Indifference by an Official Capacity Defendant

A federal official is liable in his official capacity on a claim seeking
prospective injunctive and declaratory relief if his official duties relate to and allow

a continuing violation of the plaintiff's constitutional rights.  *See Saine v. Hosp. Auth. of Hall County*, 502 F.2d 1033, 1035-37 (5th Cir. 1974); *Schneider v. Smith*, 390 U.S. 17 (1968) (permitting suit for prospective injunctive and declaratory relief against the Commandant of the United States Coast Guard in his official capacity); *Philadelphia Co. v. Stimson*, 223 U.S. 605, 620-22 (1912) (holding that Secretary of War could be sued in his official capacity for prospective injunctive relief); *see generally Ex Parte Young*, 209 U.S. 123, 157-61 (1908).

## II.   INJUNCTIVE RELIEF IS APPROPRIATE TO REMEDY AN EIGHTH AMENDMENT VIOLATION

A court may "grant appropriate injunctive relief" to remedy an Eighth Amendment violation.  *Farmer*, 511 U.S. at 846.  For example, a district court may order that a prisoner be removed from a facility and placed in an institution where his safety can be assured.  *See Streeter v. Hopper*, 618 F.2d 1178, 1182 (5th Cir. 1980); *see also Walker v. Lockhart*, 713 F.2d 1378, 1383 (8th Cir. 1983) (directing the district court to order that the plaintiff be transferred to a prison outside of Arkansas).

Injunctive relief is appropriate where a plaintiff shows "(1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; (3) irreparable harm will result if the court does not order injunctive relief; and (4) if issued, the injunction would not be adverse to the public interest."  *Thomas*, 614 F.3d at 1317

(citations omitted).  The court must also be sure "the scope of the awarded relief does not exceed the identified harm."  *Id.* (citation omitted).  Under the Prison Litigation Reform Act, 18 U.S.C. § 3626, injunctive relief should be "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal right, and [be] the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

### A.    Plaintiff's Irreparable Injury

An "irreparable injury" is an injury that cannot be remedied through monetary compensation.  *See Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990); *Sierra Club v. Martin*, 71 F. Supp. 2d 1268, 1327 (N.D. Ga. 1996) (focus of irreparable injury is "whether there is any adequate remedy at law for the injury in question").

The threat of assault constitutes an irreparable harm.  *See, e.g.*, *Wyatt v. Toundstone*, 892 F. Supp. 1410, 1421 (M.D. Ala. 1995).  Indeed, the Supreme Court has observed that "'[i]t would,' indeed, 'be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them.'" *Farmer*, 511 U.S. at 845; *see also id.* (explaining that the "subjective approach to deliberate indifference does not require a prisoner seeking 'a remedy for unsafe conditions [to] await a tragic

event [such as an] actua[l] assaul[t] before obtaining relief'") (alterations in

*Farmer*) (citation omitted).

Further, a continuing constitutional violation itself constitutes an

irreparable harm.  *See, e.g.*, *Laube v. Haley*, 234 F. Supp. 2d 1227, 1251 (M.D.

Ala. 2002) ("The existence of a continuing constitutional violation constitutes

proof of an irreparable harm.") (quoting *Preston v. Thompson*, 589 F.2d 300, 303

n.3 (7th Cir. 1978)); *see also Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996)

(violation of prisoner's Eighth Amendment rights created irreparable harm

warranting injunctive relief).

**B.     The Public Interest in Injunctive Relief**

"[I]t is always in the public interest to prevent violation of a party's

constitutional rights."  *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*,

23 F.3d 1071, 1079 (6th Cir. 1994); *see also Chase v. City of Gainesville*, No.

1:06-CV-044, 2006 WL 2620260, at *3 (N.D. Fla. Sept. 11, 2006) ("[T]he public

certainly has an interest in seeing that its constitutional rights are protected,

because all citizens have a stake in upholding the Constitution.") (internal

quotation omitted); *Laube*, 234 F. Supp. 2d at 1252.  Additionally, there is a strong

public interest in protecting individuals from retaliation resulting from their

cooperation with law enforcement officials.  *See, e.g.*, *United States v. Leiva-*

*Portillo*, No. 1:06-CR-350-WSD, 2007 WL 1706351, at *2 (N.D. Ga. June 12,

2007) (noting the "public interest in encouraging and facilitating effective law enforcement" and "the protection of the lives of those who provide information"); *see generally United States v. Carmichael*, 326 F. Supp. 2d 1267, 1298 (M.D. Ala. 2004) (noting "the public's interest in effective law enforcement by encouraging future witnesses to come forward.").

C.   **Long-Term Placement of Plaintiff in a Special Housing Unit (SHU) Is Not a Reasonable Alternative To Transfer of Plaintiff to a Safe Prison Facility**

Courts have long recognized that long-term placement in SHU, where an inmate is subjected to prolonged isolation, can be damaging to inmates' mental health. Indeed, "[t]he effect of prolonged isolation on inmates has been repeatedly confirmed in medical and scientific studies." *Lee v. Coughlin*, 26 F. Supp. 2d 615, 637 (S.D.N.Y. 1998); *see also Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988) (noting that "there is plenty of medical and psychological literature concerning the 'ill effects' of solitary confinement (of which segregation is a variant)"); *Comer v. Stewart*, 230 F. Supp. 2d 1016, 1025 n.18 (D. Ariz. 2002) (explaining "'SHU Syndrome' . . . which has been identified by some mental health professionals as a collection of psychological symptoms experienced by inmates confined in cells with little social interaction or other sensory stimulus, particularly for lengthy periods of time"); *McClary v. Kelly*, 4 F. Supp. 2d 195, 208 (W.D.N.Y. 1998) ("Social science and clinical literature have consistently reported

that when human beings are subjected to social isolation and reduced environmental stimulation, they may deteriorate mentally and in some cases develop psychiatric disturbances.") (internal quotation marks omitted); *cf. Gates v. Collier*, 501 F.2d 1291, 1304 (5th Cir. 1974) ("[T]here is a line where solitary confinement conditions become so severe that its use is converted from a viable prisoner disciplinary tool to cruel and unusual punishment.").

## III.   DEFENDANTS SHOULD BE PRECLUDED FROM RELYING ON DOCUMENTS NOT PRODUCED DURING DISCOVERY AND OFFERING WITNESSES NOT IDENTIFIED IN THEIR FEDERAL RULE OF CIVIL PROCEDURE 26 DISCLOSURES.

Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." "Rule 37 is designed to be a strong incentive for parties to disclose information they will use at trial . . . ." *Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1308 (N.D. Ga. 2003) (excluding witnesses and documentary evidence not disclosed during discovery where defendants failed to offer substantial justification for not complying with discovery obligations and failed to show that the failure was harmless); *see generally In re Stand 'N Seal, Prods. Liab. Litig.*, 623 F. Supp. 2d 1355, 1364-65 (N.D. Ga. 2009) (excluding statement in witness's affidavit that should have been included in witness's deposition testimony or supplemental

expert report); *Fed. Trade Comm'n v. Nat'l Urological Group, Inc.*, 645 F. Supp. 2d 1167, 1179-80 (N.D. Ga. 2008) (finding a witness's declaration inadmissible where the proffering party failed to identify the witness in its initial disclosures or list her as a witness in response to interrogatories).